ELLIOTT *v*. FOSTER.

4-8981                                                    224 S. W. 2d 353

Opinion delivered November 21, 1949.

*Chas. W. Garner,* for appellant.

*J. E. Lightle, Jr.,* for appellee.

GRIFFIN SMITH, Chief Justice. When a truck Raymond Elliott was driving for G. W. Garner turned left on Highway No. 30 to enter a side road, it was struck from the rear by a passenger car driven by R. W. Foster.

Each vehicle was damaged, but neither operator received a personal injury. Foster sued Elliott and Garner for $400 and procured judgment for $203.09. In a cross-complaint Garner asked for $200 covering repair bills, but the jury found against him. Elliott and Garner have appealed from the money judgment against them, while Garner—contending that undisputed evidence entitled him to $84.69 for damage done to his truck—has appealed from the judgment disallowing that item.

Foster's testimony is that he was driving at 40 or 45 miles an hour at a distance of approximately 200 feet behind the truck. He pulled to the left, intending to pass. The truck was not going more than 30 miles an hour, and it was not necessary that speed of the overtaking car be increased in order to go around the truck. The highway in front was clear for a considerable distance. According to Foster the accident was caused by Elliott's act of suddenly turning to the left without giving a signal of intent. This occurred when the trailing car was 35 or 40 feet behind the truck. Foster says he was then on the left of the concrete and had not sounded his horn. The dirt road Elliott endeavored to take crosses an embankment or levee, but entrance to the road was not visible to Foster before the emergency arose. He testified that Elliott's sudden movement required him to turn quickly to the right, so when the impact occurred the rear car was almost right of center —perhaps eight or nine inches to the left of the median line.

On cross-examination Foster testified that he "had it in mind" to sound his horn before actually passing; but when the truck turned, his entire attention was required to prevent a greater and more direct impact.

Elliott was sure that when at a distance of about a hundred feet from the intended turn he held out a hand with fingers pointing to the levee road. The turning movement had been executed to a point where the front wheels were well on the dirtway, "and the next thing I knew that car hit my truck and turned it over." At the time Elliott turned, the truck speed, he says, was about

eight miles per hour. He had just shifted to second gear as the side road was "headed for". These questions and answers could well have influenced the jury:

Question: "Before starting to make the turn, did you slow your truck down?" A. "Yes, sir." Q. "You slowed your truck right in the middle of the highway?" A. "Well, no." Q. "You had a rear-view mirror on that truck?" A. "That is right." Q. "Did you ever look out?" A. "No, I didn't look back, but I gave my signal." Q. "You just stuck your hand out and turned, regardless of what was coming?" A. "Well, that is right."

The testimony of persons interested in the result of litigation, and particularly of those who would profit by a verdict, is not to be treated as uncontradicted. *McDonald* v. *The Olla State Bank,* 192 Ark. 603, 93 S. W. 2d 325; *Strickland* v. *Missouri Pacific Transportation Company,* 195 Ark. 950, 115 S. W. 2d 830. This simply means that in the case at bar the jury could have believed that Elliott actually gave the signal, but acted too late; that he extended his left arm in a way that ordinarily would have been sufficient in point of time, but did it in a careless and ineffectual manner; or, finally, that no signal was given, even though the witness may have thought he acted promptly and sufficiently. Likewise, the jury could have believed, as Foster testified, that Elliott was traveling 30 miles an hour, contrary to Elliott's assertion that he was "just jogging along." From competent evidence that the jury had the right to accept, it could have found that Elliott did nothing to warn Foster that a turn was intended, therefore a signal by Foster was not reasonably required before the emergency made such action both useless and impracticable. Under well established rules of evidence the conflicting factual status was for the jury's determination.

Appellant complains of a failure to instruct that a verdict could not be returned unless facts upon which it was based were sustained by a preponderance of the evidence. Final summation by the trial Judge included the

following: "You have previously been given instructions on the credibility of witnesses and the preponderance of the evidence. I think you understand these instructions, and it will not be necessary to give them unless the parties want them given again."

At first glance the comment appears inconsistent, but when the last word, "again", is given its obvious meaning, it reflects the Court's belief that the two subjects had been touched upon in a manner quite sufficient to inform the jury in respect of legal requirements. It is certain that counsel for appellants was courteously invited to make any request or suggestion deemed pertinent. His failure to do this at a time when such a request, presumptively, would have been effective should not now avail the complaining parties of an advantage that would reverse the judgments when the corrective process was waived during the trial period.

The only instruction in which "preponderance" is mentioned is No. 4, given at appellants' request. It told the jury that if by such weight of evidence Foster was shown to have been guilty of negligently operating his car, that his negligence, if any, was the sole and proximate cause of the collision, and that without such negligence the collision would not have occurred, then Garner would be entitled to a verdict for $84.69, "provided you further find . . . that . . . Raymond Elliott was not guilty of negligence *which contributed to the cause of the collision.*"

Appellants further complain that the Court erred in telling the jury through plaintiff's Instruction No. 1 that if Elliott's negligence either caused Foster's damage *or contributed to it,* etc. The argument is that these instructions were inherently wrong because the jury was informed that mere contribution by Elliott to the cause resulting in damage would subject the defendants to liability.

Argument strikingly similar to appellants' position in the case at bar was advanced in *Hurley* v. *The Gus Blass Company,* 191 Ark. 917, 88 S. W. 2d 850. One of the instructions there made it the plaintiff's duty to ex-

ercise reasonable care for her own safety, and it told the jury that if her actions failed to meet that standard, or if her conduct "contributed in any degree, however slight, to her injury, then she cannot recover damages from the defendant." The Court's comment, in an opinion written by Mr. Justice HUMPHREYS, was expressed in a quotation from *Little Rock & Fort Smith Ry. Co.* v. *Miles*, 40 Ark. 298-332, 48 Am. Rep. 10: "The test of contributory negligence is, Did the negligence contribute in any degree to produce the injury complained of?" The Hurley-Gus Blass case was cited in *Shipp* v. *Missouri Pacific Transportation Co.*, 197 Ark. 104, 122 S. W. 2d 593, where it was said that conformity to the stricter dogmas of technical construction would have been better served had the jury been expressly directed to find whether the plaintiff's action was one of negligence. "But," says the opinion, "this is exactly what the jury did determine. This determination was made in the light of facts and circumstances which acquired evidential value because of the substantial nature of the testimony, and [the facts and circumstances] were considered under instructions not susceptible of misunderstanding. To reverse this judgment and remand the cause for want of a prescript which could not enlighten the jury by even a shadowy quantum would be placing ritual above substance."

While the issues discussed in the Shipp case and in the case at bar are not the same, reasoning used in the former is applicable here. In appellee's Instruction No. 3 the jury was told that if Elliott turned from the highway without observing statutory signals, this conduct was evidence of negligence, [and] if *such* negligence, if any, "caused or contributed to cause" the collision, there should be a verdict for the plaintiff, provided the jury further found that the plaintiff was "free of negligence which contributed to the damage". Appellants' Instruction No. 4 told the jury that if Foster's negligence was the proximate cause, there should be a verdict for Garner, provided Elliott was not guilty of negligence "which contributed to the cause of the accident".

Our conclusion is that each party was willing to use the expressions now complained of when their inclusion in an instruction would be beneficial, but appellants see harm when the reading is from a different angle. In these circumstances the alleged prejudice should not be taken advantage of, even though language of more appropriate form might have been used.

Affirmed.