McDANIEL *v.* JOHNSON.

5-664                                            278 S. W. 2d 657

Opinion delivered May 9, 1955.

*Wiley W. Bean,* for appellant.

*D. B. Bartlett,* for appellee.

MINOR W. MILLWEE, Justice. The parties to this suit are neighbors who reside on adjacent properties in the city of Clarksville, Arkansas. Appellant shot and killed appellee's registered pointer bird dog on the night of June 27, 1954. In an action by appellee for damages appellant admitted killing the dog but asserted that it was done to protect his cattle from attack by the dog after due notice to appellee of prior trespasses and a request that the dog be kept away from appellant's property. The jury found for appellee and fixed the market value of the dog at $20. In response to a special interrogatory the jury also found the killing to be willful, malicious and wanton as alleged by appellee. The trial court entered judgment for treble damages in the sum of $60.00.

For reversal appellant challenges the sufficiency of the evidence to support the verdict, and asserts that he had a legal right to kill the dog under the undisputed evidence.

Each of the parties maintains a pasture on his premises in which he keeps several head of cattle. According to the testimony of appellant he talked to appellee's wife by telephone about 2 or 3 months prior to the killing and told her appellee's dog was running his cattle and asked that it be kept up. In response to a telephone call from Mrs. Fletcher Thompson, another neighbor, on the night in question, appellant stated that he secured his gun and a flashlight and proceeded to his pasture where he found appellee's bird dog and a German Shepherd chasing his cattle. He ran the dogs away and waited a few minutes when they returned and again started chasing and snapping at the cattle. After backing the dogs off he intentionally shot and killed appellee's dog but was unable to get a shot at the other dog because it was between appellant and a calf until it ran away. Appellant also stated that he noticed an insignificant bite on the tail of a calf the next morning; also a gash about 3 inches long on the left front leg of a steer which he first thought was a simple cut but which required treatment by a veterinarian about 2 months later when it failed to heal

properly. Although appellee's dog had chased his cattle and had been a regular nuisance around his place for 6 or 7 months, appellant admitted that he had never talked to appellee about it personally and only talked to appellee's wife the one time. Mrs. McDaniel testified that she had seen appellee's dog in their pasture running cattle "a number of times" previously but did not see it on the night in question.

Mrs. Fletcher Thompson, who telephoned appellant on the night in question, testified that she had heard dogs running appellant's cattle previously. Although she had seen appellee's dog in her yard and in appellant's yard often, she had never seen it running appellant's cattle.

Appellee testified that appellant had never notified him that the dog was running his cattle nor asked that it be kept up. Appellee and others who frequently hunted with the dog testified they never knew of it running cattle and that it was afraid of, and would run from, a cow. Appellant had the dead dog hauled to the "city dump" without informing appellee that he had killed it. Appellee learned of the dog's death when municipal authorities objected to it being placed on the dump. Appellee stated that he kept the dog up most of the time and that it had never chased the cattle he kept in his own pasture. On cross-examination appellee further testified: "Q. I will ask you this. Wasn't that dog awfully hard to keep up? A. Yes. Q. He would chew the wire into on the pen? A. Yes. Q. And get out? A. Yes. Q. Did you know that he ate the wire into on Charlie's [appellant's] pen and got in there with a little registered screw tail bull dog of his, and that they had to have her operated on, to take the pups from her? A. I think that is the reason that Charlie killed my dog was on that account, instead of him running his cattle. Q. That would be a good reason wouldn't it? A. That is not for me to decide."

Appellee's wife testified that 6 months prior to the killing appellant told her over the telephone that some dogs were running his cattle and that he thought one of

them might be appellee's dog but he was not sure. Appellant promised to call back and let them know if he found out for sure that appellee's dog was involved but he never did so. She informed appellee of this conversation.

Appellant says the undisputed evidence shows that he had a right to kill the dog in defense of his cattle. It is insisted there is no evidence to dispute the fact that the dog had been running his cattle for several months with appellee's knowledge and was attacking the cattle at the time of the shooting. The evidence as a whole shows a sharp factual dispute as to whether the dog had been molesting appellant's cattle or would chase cattle at all; also as to whether appellee permitted the dog to run at large with knowledge of any vicious tendency. While it may be true that appellant was the only person present at the time of the killing, we have repeatedly held that the testimony of a party to a suit, or even one interested in the result of litigation, is not to be treated as undisputed in testing the legal sufficiency of the evidence. *Phelps v. Partee,* 208 Ark. 212, 185 S. W. 2d 705; *Elliot v. Foster,* 216 Ark. 104, 224 S. W. 2d 353.

Since appellant admitted that he killed the dog intentionally, it devolved upon him to show that he acted in good faith in order to protect his property, and not negligently or wantonly. *Kanis v. Rogers,* 119 Ark. 120, 177 S. W. 413. This issue together with the questions whether appellee permitted his dog to run at large with knowledge that it would injure cattle, and whether appellant acted in good faith or willfully, maliciously and wantonly in killing the dog were submitted to the jury under instructions to which no objection was made by either side. In our opinion the evidence was sufficient to sustain the verdict. The fact that we might have reached a different conclusion if we had been the triers of fact would not justify us in invading the province of a Johnson county jury.

Affirmed.

Chief Justice Seamster not participating.