2001 ND 20

Paul KAUTZMAN and Susan
Kautzman, Plaintiffs
and Appellants,

v.

Cass County Deputy Sheriff Gregory
McDONALD; Cass County Deputy
Sheriff Jeff Olson; Cass County,
North Dakota; State of North Dakota;
North Dakota Highway Patrolman
Mitchell Rumple; North Dakota
Highway Patrolman Gary Odegard,
Defendants and Appellees.

City of Fargo, and Fargo City
Policeman Al Dienslake,
Defendants.

No. 20000156.

Supreme Court of North Dakota.

Feb. 2, 2001.

Jonathan T. Garaas, Garaas Law Firm, Fargo, ND, for plaintiffs and appellants.

Angela Elsperger Lord, Vogel, Weir, Hunke & McCormick, Ltd., Fargo, ND, for defendants and appellees Cass County Deputy Sheriff Gregory McDonald; Cass County Deputy Sheriff Jeff Olson; Cass County, North Dakota.

Douglas A. Bahr, Solicitor General, Attorney General's Office, Bismarck, ND, for defendants and appellees State of North Dakota; North Dakota Highway Patrolman Mitchell Rumple; North Dakota Highway Patrolman Gary Odegard.

MARING, Justice.

[¶ 1] Paul and Susan Kautzman appealed from judgments dismissing their tort action, arising from the shooting deaths of their five dogs, against Cass County Deputy Sheriffs Gregory McDonald and Jeff Olson in their official capacities; North Dakota Highway Patrolmen Mitchell Rumple and Gary Odegard in their official capacities; Cass County; and the State. We conclude the trial court properly dismissed the action against the highway patrolmen and the State for failure to timely file a notice of claim with the director of the Office of Management and Budget. We also conclude the trial court did not err in dismissing the Kautzmans' claim for intentional infliction of emotional distress because the defendants' conduct, as a matter of law, could not reasonably be regarded as extreme and outrageous. However, we conclude the trial court erred in dismissing the negligence claim against the deputy sheriffs and Cass County because genuine disputes of material fact exist which preclude summary judgment. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶ 2] The Kautzmans owned four German Shepherds and one Golden Retriever cross-breed which they kept as family pets on their three-acre tract of land in Cass County. During the early morning hours of February 19, 1999, the dogs escaped through a fence from the Kautzmans' yard. Police received several phone calls about the wandering dogs from concerned area residents. The dogs were eventually shot to death by law enforcement officers as the dogs were beginning to roam into Fargo city limits.

[¶ 3] In a complaint dated August 10, 1999, the Kautzmans sued the State, the County, Deputy Sheriffs McDonald and Olson, and Highway Patrolmen Rumple and Odegard for the destruction of their dogs.[1] The Kautzmans alleged the actions of the law enforcement officers violated a Cass County ordinance and state statutes. They sought more than $50,000 in damages for the defendants' "intentional, wrongful, negligent, grossly negligent,

1. The Kautzmans also sued the City of Fargo and police officer Al Dienslake. The Kautzmans later stipulated to dismissal with prejudice of its action against the City and Dienslake.

and/or wilful acts," and for intentional infliction of emotional distress.

[¶ 4] The State, Rumple and Odegard moved for dismissal of the complaint under N.D.R.Civ.P. 12. The trial court granted the motion, concluding dismissal was required because the Kautzmans failed to present a notice of claim to the director of the Office of Management and Budget within 180 days after the alleged injury was discovered or reasonably should have been discovered. The County, McDonald and Olson later moved for summary judgment of dismissal under N.D.R.Civ.P. 56. The trial court granted the motion, concluding the statutes and ordinance relied on by the Kautzmans did not impose an affirmative duty on the law enforcement officers to not shoot the dogs. The court also dismissed the claim for intentional infliction of emotional distress, concluding the deputies' actions, as a matter of law, did not meet the threshold requirement of extreme and outrageous conduct. The court also awarded the County and the deputies $1,262.10 for their costs and disbursements. The Kautzmans appealed.

## II

[¶ 5] The Kautzmans argue the trial court erred in dismissing their lawsuit in its entirety because they have sued the highway patrolmen, as well as the deputy sheriffs, not only in their official capacities, but also in their individual capacities.

[¶ 6] The Kautzmans' complaint does not contain the terminology, "official capacity," "individual capacity" or "personal capacity," which is ordinarily used when a plaintiff seeks to hold a government employee liable in an official or individual capacity. Although we have declined to require capacity stipulations in a complaint, *see Burr v. Kulas*, 532 N.W.2d 388, 392 (N.D.1995), capacity stipulations do clarify a plaintiff's intentions. *See, e.g., Kristensen v. Strinden*, 343 N.W.2d 67, 71–73 (N.D.1983). From our examination of the complaint in this case, we conclude it does not state claims against the law

enforcement officers in their individual capacities.

[¶ 7] The complaint names as defendants the State, the County, and the four law enforcement officers, each preceded by their official government title of either "Highway Patrolman" or "Deputy Sheriff." The body of the complaint prefaces allegations against the law enforcement officers with their official titles, and alleges each of them was either a highway patrolman or deputy sheriff "at all times pertinent to this Complaint." The complaint does not allege the law enforcement officers acted outside the scope of their employment at any time.

[¶ 8] One paragraph of the 23 paragraph complaint summarily alleges the defendants committed "intentional, wrongful, negligent, grossly negligent, and/or wilful acts." Acts of gross negligence and willful or wanton misconduct can render a state or county employee personally liable. *See* N.D.C.C. §§ 32–12.1–04(3) and 32–12.2–01(6). *See also Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 34, 576 N.W.2d 505; *Wishnatsky v. Bergquist*, 550 N.W.2d 394, 403 (N.D.1996). However, the Kautzmans have also sought damages for intentional infliction of emotional distress, a tort which requires extreme or outrageous conduct that is intentional or reckless. *See Hougum v. Valley Memorial Homes*, 1998 ND 24, ¶ 26, 574 N.W.2d 812. Because these allegations could relate to the Kautzmans' claim against the defendants in their official capacities for intentional infliction of emotional distress, *see Dimond v. State ex rel. Bd. of Higher Educ.*, 1999 ND 228, ¶ 23, 603 N.W.2d 66 we do not view these allegations as indicative of an intention to sue the law enforcement officers in their individual capacities.

[¶ 9] Construing the complaint as a whole, we conclude it states claims against the law enforcement officers in their official capacities only, and not in their individual capacities.

## III

[¶ 10] The Kautzmans argue the trial court erred in concluding their notice of claim against the State and the highway patrolmen was not timely filed with the director of the Office of Management and Budget.

[¶ 11] Before an action can be brought against the State or one of its employees, N.D.C.C. § 32–12.2–04(1) requires the plaintiff to give timely notice of the claim:

> A person bringing a claim against the state or a state employee for an injury shall present to the director of the office of management and budget within one hundred eighty days after the alleged injury is discovered or reasonably should have been discovered a written notice stating the time, place, and circumstances of the injury, the names of any state employees known to be involved, and the amount of compensation or other relief demanded.

In *Earnest v. Garcia*, 1999 ND 196, ¶ 6, 601 N.W.2d 260, we said this "statute requires written notice of a claim; actual notice is insufficient." *See also Allied Mut. Ins. Co. v. Director of North Dakota Dept. of Transp.*, 1999 ND 2, ¶ 10, 589 N.W.2d 201; *Messiha v. State*, 1998 ND 149, ¶ 21, 583 N.W.2d 385. Absent the timely filing of a notice of claim against the state or one of its employees, the court lacks subject matter jurisdiction to entertain the lawsuit. *Dimond*, at ¶ 26; *Earnest*, at ¶ 7. Contrary to the Kautzmans' argument, nothing in the statute's language or in the legislative history of its 1997 amendment suggests the creation of a dual administrative and legal procedure which makes the 180 day period applicable only in an administrative context. *See Cooke v. University of North Dakota*, 1999 ND 238, ¶¶ 11–13, 603 N.W.2d 504.

[¶ 12] If the jurisdictional issue is intertwined with the merits of the case, a N.D.R.Civ.P. 12 motion should be addressed using N.D.R.Civ.P. 56 standards.

*Allied*, at ¶ 5 n. 1. The Kautzmans' dogs were shot on February 19, 1999, and they filed a notice of claim with the director of the Office of Management and Budget on September 3, 1999, more than 180 days after the dogs were shot. The Kautzmans argue the 180 days should not begin to run until all elements of the tort have been discovered by the plaintiff. In this case, the Kautzmans argue they did not know they had a cause of action until May 20, 1999, after receiving a copy of an investigation report prepared by the Bureau of Criminal Investigation indicating to the Kautzmans Deputy Sheriff McDonald "falsely reported" the distance from which he shot and killed the first dog.

[¶ 13] We reject the Kautzmans' argument. First, the investigation report names only Deputy Sheriff McDonald and the gun he used to shoot the lead dog. McDonald is not a state employee dismissed by the court for failure to comply with the 180 day notice of claim requirement. Moreover, the record reveals the Kautzmans were aware of the defendants' involvement within days, if not hours, of the shootings. The Kautzmans were either given, or were given access to, the law enforcement officers' reports of the incident. Paul Kautzman began conducting his own investigation of the incident the day after the shootings and formed the opinion law enforcement officers were not telling the truth. The Kautzmans had knowledge of a potential claim against the defendants shortly after the dogs were killed, and the investigation report merely confirmed their suspicions. The Kautzmans had sufficient time to comply with the notice of claim requirement. Indeed, the complaint is dated August 10, 1999, prior to the expiration of the 180 day period. This is not a case in which the plaintiffs were without the means of learning of their cause of action until more than 180 days after suffering an injury. Although an Assistant Attorney General admitted service of the complaint on August 13, 1999, before expiration of the 180 day period, the record shows the Kautzmans

did not deliver a copy of the complaint to the director of the Office of Management and Budget as required by N.D.C.C. § 32–12.2–04(5) until September 3, 1999, after the period had expired. We therefore need not consider whether providing a copy of the complaint to the director of Management and Budget within the 180 day period satisfies the notice of claim requirement. *See* Annot., *Complaint as satisfying requirement of notice of claim upon states, municipalities, and other political subdivisions,* 45 A.L.R. 5th 109 (1997).

[¶ 14] We conclude the trial court did not err in dismissing the action against the State and Highway Patrolmen Rumple and Odegard for failure to file a timely notice of claim with the director of the Office of Management and Budget.

## IV

■ [¶ 15] The Kautzmans argue the trial court erred in granting summary judgment dismissal of its claims against Cass County and Deputy Sheriffs McDonald and Olson.[2]

■ [¶ 16] Summary judgment under N.D.R.Civ.P. 56 is a method for promptly and expeditiously disposing of a controversy, without trial, if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual issues would not alter the results. *Mead v. Farmers Union Mut. Ins. Co.,* 2000 ND 139, ¶ 12, 613 N.W.2d 512. The evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Stanley v. Turtle Mountain Gas & Oil, Inc.,* 1997 ND 169, ¶ 6, 567 N.W.2d 345. Issues of fact may become issues of law if reasonable persons

could reach only one conclusion from the facts. *Mandan Educ. Ass'n v. Mandan Public School District No. 1,* 2000 ND 92, ¶ 6, 610 N.W.2d 64.

## A

[¶ 17] The Kautzmans contend their claim for intentional infliction of emotional distress was improperly dismissed on summary judgment.

■ [¶ 18] The elements of a tort action for the intentional infliction of emotional distress are extreme and outrageous conduct that is intentional or reckless and causes severe emotional distress. *Hummel v. Mid Dakota Clinic, P.C.,* 526 N.W.2d 704, 710 (N.D.1995). The "extreme and outrageous" threshold is narrowly limited to conduct that exceeds "all possible bounds of decency," and which would arouse resentment against the actor and lead to an exclamation of "Outrageous" by an average member of the community. *Muchow v. Lindblad,* 435 N.W.2d 918, 924 (N.D.1989).

[¶ 19] The court must initially decide whether a defendant's conduct reasonably may be regarded as "extreme and outrageous." *Hougum,* at ¶ 26. If reasonable people could differ, a plaintiff is entitled to have the trier of fact determine whether the conduct is sufficiently extreme and outrageous to result in liability. *Security Nat. Bank, Edgeley v. Wald,* 536 N.W.2d 924, 927 (N.D.1995).

■ [¶ 20] The defendants presented evidence that McDonald responded to a call from a woman who reported five dogs were circling her house and she was unable to leave her residence. While McDonald was at the residence, additional calls about the dogs were made to law enforcement, including the highway patrol. McDonald drove to Rumple's location, where they saw the dogs roaming into

**2.** Under *Binstock v. Fort Yates Public School District,* 463 N.W.2d 837, 842 (N.D.1990), "a political subdivision and its employee may be jointly liable if an employee caused injury while acting within the scope of his employment in a reckless or grossly negligent manner or a willful or wanton manner."

Fargo city limits. McDonald called to alert the Fargo Police Department, and agreed to watch the dogs while the animal control unit was en route. After following the dogs, McDonald stopped, got his weapon, and stood by a house under construction. One of the dogs spotted McDonald and started barking and running toward him. The other four dogs followed and McDonald believed the dogs were on the attack. McDonald shot the first dog, and the other dogs stopped, turned, and began traveling in another direction. McDonald again contacted the Fargo Police Department and said the dogs were aggressive and he feared for the safety of people in the area. Olson and other law enforcement officers arrived, and it was decided the dogs needed to be contained. Olson and other officers shot the remaining four dogs, some from a distance of several hundred yards.

[¶ 21] The Kautzmans presented evidence that the dogs were not normally allowed to run at large or unrestrained and, upon discovering the dogs were missing, they unsuccessfully searched for them. According to the Kautzmans, they had never known the dogs "to act in a vicious manner toward any animal or human being." The Kautzmans alleged in an affidavit:

> Unknown to us, the four (4) German Shepards and one (1) Golden Retriever (cross) were located by Defendant Cass County Deputy Sheriff Greg McDonald who falsely reported that he had been "attacked" by the five dogs running in a pack, and that the five dogs were "vicious." He also falsely reported that it was necessary to shoot the lead dog, later claiming such shooting occurred while the lead dog was only 20 feet away, which was not true. Bluntly, the ballistics and blood indicate a distance in excess of 65 feet separated Deputy Sheriff Gregory McDonald and the dogs, clearly different than McDonald's ever-changing self-serving account. The injuries to the first dog, personally observed by Paul Kautzman, are impossible from a distance less than 65 feet, and in addition, the injuries are not consistent with a dog headed toward the deputy.

. . . .

> After Defendant Cass County Deputy Sheriff Greg McDonald had shot one of the five dogs, Defendant Cass County Deputy Sheriff Jeff Olson, and other law enforcement officers . . . proceeded to shoot the remaining four dogs owned by the Plaintiffs in rural Cass County, North Dakota, utilizing a high-powered rifle and their service handguns. This was admitted by the Defendants, and to begin with, involved distances involving hundreds of yards separation from animal to the closest human being.

The Kautzmans further allege they "continue to agonize over the needless pain and suffering experienced by loved 'members of our household.' "

[¶ 22] We agree with the trial court that the law enforcement officers' actions could not reasonably be interpreted as extreme and outrageous within the parameters of the tort of intentional infliction of emotional distress. There is no dispute that the officers were unaware the dogs belonged to the Kautzmans, and therefore they could not have intended the Kautzmans any harm. There is also no dispute that the officers were responding to calls from concerned citizens. The major dispute appears to be the distance from which the dogs were shot, and whether the shootings were actually necessary. These circumstances are simply insufficient to constitute extreme and outrageous conduct on the part of the law enforcement officers. Moreover, the Kautzmans' bald allegation that they "continue to agonize" over the loss of their dogs is insufficient to meet the requirement of severe emotional distress.

[¶ 23] We conclude the trial court did not err in dismissing the Kautzmans' claim for intentional infliction of emotional distress.

## B

[¶ 24] The Kautzmans argue the trial court erred in granting summary judgment dismissal of their tort action against Cass County and the deputy sheriffs.

[¶ 25] To support their action, the Kautzmans relied on Cass County Government Ordinance # 1998–3, which prescribes penalties for persons who willfully "[t]orment, torture, abuse, cruelly kill or otherwise inflict cruelty upon an animal or bird." They also relied on N.D.C.C. § 36–21.1–06(1), which allows law enforcement officers to take custody of and care for abandoned animals, and N.D.C.C. § 36–21.1–02(7), which provides "[n]o person may willfully instigate, or in any way further, any act of cruelty to any animal or animals, or any act tending to produce such cruelty." The trial court concluded, as a matter of law, the Kautzmans were "not of a class of persons to be protected by the statutes or ordinance because they do not provide for civil liability," and therefore, the defendants "owed no duty" to the Kautzmans.

[¶ 26] Although we agree with the trial court that the ordinance and state statutes do not provide the basis for a private right of action, the court's reasoning is flawed. The case relied on by the court, *Keyes v. Amundson*, 391 N.W.2d 602, 608 (N.D.1986), held "before the violation of an ordinance may be considered as evidence of negligence, the court must determine that a purpose of the ordinance was to protect the class of persons injured against the type of injury and harm suffered." *Keyes* set forth a standard for determining the admissibility of evidence of negligence, not a standard for determining whether a tort duty exists. Here, the Kautzmans have alleged their dogs' deaths resulted "directly and proximately from the intentional, wrongful, negligent, grossly negligent, and/or wilful acts of the Defendants." This allegation states an action in tort for the death of the Kautzmans' dogs.

[¶ 27] The owner of a domestic animal which is killed or injured by the negligent or willful act of a third person proximately resulting in that death or injury is entitled to recover for the loss suffered. 3A C.J.S. *Animals* § 274 (1973); 4 Am.Jur.2d *Animals* § 142 (1995). This general rule is recognized in North Dakota. *See Trautman v. Day*, 273 N.W.2d 712 (N.D.1979). *See also* N.D.C.C. § 36–21–13 ("Exemplary damages may be given to the owner of any animal for any wrongful injury thereto when such injury is committed willfully or by gross negligence.") The tort cause of action has also been recognized in other jurisdictions. *See, e.g.*, *McDaniel v. Johnson*, 225 Ark. 6, 278 S.W.2d 657 (1955); *Soucy v. Wysocki*, 139 Conn. 622, 96 A.2d 225 (1953); *Collier v. Hoffman*, 482 So.2d 922 (La.App.2d Cir. 1986); *Wilson v. City of Eagan*, 297 N.W.2d 146 (Minn.1980); *Frost v. Taylor*, 649 S.W.2d 264 (Mo.App.1983); *Williams v. Spinola*, 50 Or.App. 87, 622 P.2d 322 (1981). As the court stated in *City of Garland v. White*, 368 S.W.2d 12, 16 (Tex. Civ.App.1963):

> Dogs are property and an owner of a dog may recover for its wrongful injury or killing. Although a vicious dog which is a public nuisance may be lawfully killed when it is roaming at large and endangering the safety of persons and property, the general rule is that to justify the killing of a dog in defense of person or property the danger must be imminent and a real or apparent necessity must exist therefor unless there is statutory authority to kill the dog under the circumstances shown.

[¶ 28] Although the evidence presented in the summary judgment motion was insufficient as a matter of law to support the Kautzmans' action for intentional infliction of emotional distress, we cannot reach the same conclusion about their action for negligence for the shooting deaths of their dogs. Under these factual circumstances, reasonable persons could reach different conclusions about the rea-

sonableness of, and the justification for, the deputies' actions. We conclude genuine issues of material fact exist which precluded summary judgment on the Kautzmans' negligence claim.

C

[¶ 29] Cass County, McDonald and Olson argue summary judgment was nevertheless appropriate because the deputies were performing a discretionary function when they shot the dogs, and they are therefore statutorily immune from suit.

[¶ 30] A political subdivision is exempt under N.D.C.C. § 32–12.1–03(3) from liability for an act or omission of its employees who are performing discretionary functions or duties. We engage in a two-part inquiry when determining whether the discretionary function exception applies: (1) whether the conduct at issue is discretionary, involving an element of judgment or choice for the acting employee; and (2) if the act is discretionary, whether that judgment or choice is of the kind the discretionary function exception was designed to shield. *Olson v. City of Garrison*, 539 N.W.2d 663, 666–67 (N.D. 1995).

[¶ 31] In *Peterson v. Traill County*, 1999 ND 197, ¶ 9, 601 N.W.2d 268, this Court addressed a political subdivision's argument that its sheriff and jailers' decision whether a jail inmate needed immediate medical attention was a discretionary function for which the political subdivision was immune from suit. We ruled that although the decision of the sheriff and jailers involved an element of judgment or choice, the judgment or choice was not of the kind the discretionary function exception was designed to shield:

The primary focus of the second part of the test is on the nature of the actions taken and on whether they are susceptible to policy analysis. *Olson*, 539 N.W.2d at 667. We explained in *Olson*, 539 N.W.2d at 667–68 (citations omitted):

The purpose of the discretionary function exception is to "prevent judicial 'second-guessing': of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." When properly construed, the exception should shield only governmental action based on public policy considerations. Moreover, public policy considerations, social, economic, or political, must be distinguished from more objective standards based on, for example, scientific, engineering, or technical considerations. The latter are not protected by the discretionary function exception, when the challenged conduct involves nothing more than a "follow the numbers" approach.

No social, economic, or political policy is implicated in deciding whether an inmate has alcohol withdrawal and whether transfer to a medical facility is necessary. Rather, this is an ordinary individualized judgment made by jailers as part of their routine work duties.

*Peterson*, at ¶¶ 13–14. The same rationale applies in this case.

[¶ 32] The decision whether the Kautzmans' dogs posed a danger to the deputies or to others, thereby justifying the dogs' destruction, implicates no social, economic or political policy, and was merely an ordinary individualized judgment made by the deputies as part of their routine work duties. Discretionary function immunity does not shield individualized decisions such as these. *See, e.g.,* *Fowler v. Town of Ticonderoga*, 131 A.D.2d 919, 516 N.Y.S.2d 368 (1987); Annot., *Personal liability of public officer for killing or injuring animal while carrying out statutory duties with respect to it*, 2 A.L.R.3d 822, at § 3[d] (1965).

[¶ 33] We conclude the discretionary function exception does not apply in this case.

D

[¶ 34] Because we reverse the summary judgment dismissal of the Kautzmans' negligence action against Cass County, and McDonald and Olson in their official capacities, we also reverse the trial court's award of costs and disbursements against the Kautzmans.

V

[¶ 35] We affirm the dismissal of the State, Rumple and Odegard from the action and the dismissal of the Kautzmans' claim for intentional infliction of emotional distress. We reverse the dismissal of the Kautzmans' negligence action against Cass County, and McDonald and Olson in their official capacities, and the court's award of costs and disbursements against the Kautzmans, and we remand for trial.

[¶ 36] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.

[¶ 37] The Honorable HODNY, S.J., sitting in place of KAPSNER, J., disqualified.