2011 ND 171

Neal A. LENO and Susan A. Leno, Plaintiffs and Appellees

v.

K & L HOMES, INC., a North Dakota Corporation, Defendant and Appellant.

No. 20100347.

Supreme Court of North Dakota.

Sept. 2, 2011.

Paul R. Sanderson (argued) and Kara J. Johnson (appeared), Bismarck, ND, for plaintiffs and appellees.

Chris A. Edison (argued), Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] K & L Homes appealed the district court judgment based upon a jury verdict in favor of Neal A. Leno and Susan A. Leno ("the Lenos"). On appeal, K & L Homes argued the district court erred by deciding K & L Homes had not sufficiently raised the defense of fault by the Lenos in its answer, the court erred by refusing to instruct the jury on comparative fault, the court erred by denying K & L Homes' request for inspection and not allowing a defendant to testify on his observations during a jury viewing, and the court erred by ruling K & L Homes had not disclaimed any implied warranties as a matter of law. We affirm.

I

[¶ 2] The Lenos purchased a newly-constructed house from K & L Homes. The Lenos alleged they noticed cracks, unevenness, and shifting due to improper construction not long after purchasing the house from K & L Homes. Initially, the Lenos claimed K & L Homes was negligent, breached the parties' contract, and breached implied warranties. The Lenos claimed the parties' contract implied warranties that the house would be built according to the applicable codes, that it would fit its purpose as a residence, and that it would be constructed according to engineering standards and in a workmanlike condition. K & L Homes denied the Lenos' allegations and responded by claiming the Lenos were at fault for the damage to the house. The Lenos subsequently dropped their negligence claim and proceeded with the case on the breach of contract and breach of implied warranties claims. K & L Homes requested the jury be instructed on comparative fault, but the district court denied the proposed comparative fault instruction. The district court decided K & L Homes had not adequately pled fault, and comparative fault did not apply to Lenos' cause of action. The district court also found, as a matter of law, that K & L Homes had not disclaimed any implied warranties in a Homeowners' Guide given to the Lenos at the closing on the house.

[¶ 3] Before trial, K & L Homes made a "request for entry for inspection," requesting that two witnesses be allowed to inspect the house. The district court noted the deadline for discovery had passed and denied the request. The district court also refused to allow Kelly Moldenhauer, the owner of K & L Homes and a witness, to testify about what he observed during the jury's viewing of the house.

[¶ 4] The jury found K & L Homes had breached the contract or implied warranty and awarded the Lenos damages. K & L Homes appealed.

II

[¶ 5] K & L Homes argued the district court erred in deciding K & L Homes had not sufficiently raised the defense of fault in its answer to the Lenos' complaint and erred in refusing to instruct the jury on comparative fault. K & L Homes pled in response to the Lenos' negligence claims: "Defendant asserts that the plaintiffs are guilty of comparative fault and that such fault is greater than any negligence or fault of the defendant, which negligence or

fault are specifically denied." The Lenos argued fault and comparative fault were irrelevant to their breach of implied warranties claim, and the court properly denied K & L Homes' fault arguments and comparative fault jury instructions.

[¶ 6] The Lenos dropped their claim that K & L Homes was negligent, but proceeded with their claims that K & L Homes breached the contract and implied warranties. In support of their breach of contract claim, the Lenos alleged:

> The parties entered a contract which provided that the defendant would provide a home constructed in a workmanlike manner which did not have defects and which would have a value equal to what the plaintiffs paid for the house.

> The defendant has breached its contract with the plaintiffs by performing in a non-workmanlike manner, which has resulted in a defective house which has substantially less value than was contracted for by the plaintiff.

In support of their breach of warranties claim, the Lenos alleged:

> [I]mplicit in the parties' contract were warranties that the house had been built according to local building codes and laws, that the house was fit for its particular purpose as a residence, that the house was constructed according to sound engineering standards, and that the house was constructed in a workmanlike manner.

> Defendant has breached all of these expressed and implied warranties and has instead delivered to the plaintiffs a defective home.

[¶ 7] K & L Homes did not assert a counterclaim under which evidence of fault would have independent significance.

[¶ 8] At the final pretrial conference, the district court said it would not allow K & L Homes to argue the Lenos were at fault for the damage to their house, and the court would not instruct the jury on comparative fault. The court ruled this was a contract case, and instead of arguing fault, K & L Homes should argue it did not commit a breach. The issue on appeal is whether fault and comparative fault were relevant to the cause of action.

■ [¶ 9] K & L Homes asserts the provisions of N.D.C.C. ch. 32–03.2 apply to this action, requiring the district court to allow the jury to allocate fault between the parties to determine recovery. Specifically, K & L Homes states:

> B. The District Court erred by failing to instruct the jury on comparative fault as requested by Appellant K & L Homes, Inc.

> 1. The Lenos' alleged breach of warranty, which is specifically defined as "fault" under N.D.C.C. § 32–03.2–01, requiring the Court give the requested comparative fault instructions and apportion fault on the special verdict form.

> 2. The Lenos' claim for breach of the warranty of workmanlike construction is a tort claim masquerading as a contract claim and should be subject to apportionment of fault under N.D.C.C. § 32–03.2–02.

Resolution of this issue requires a review of the development of the doctrine of implied warranty of fitness for the purpose in construction contracts and of modified comparative fault.

■ [¶ 10] Since 1973, North Dakota law has recognized an implied warranty of fitness for the purpose in construction contracts. *Dobler v. Malloy*, 214 N.W.2d 510, 516 (N.D.1973) (citing *Robertson Lumber Co. v. Stephen Farmers Coop. Elevator Co.*, 274 Minn. 17, 143 N.W.2d 622, 625–26 (1966)); *see also Air Heaters, Inc. v. John-*

*son Electric, Inc.*, 258 N.W.2d 649, 653 (N.D.1977). This Court has recognized the implied warranty of fitness for the purpose in construction contracts where:

(1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; and the owner (2) has no particular expertise in the kind of work contemplated; (3) furnishes no plans, designs, specifications, details, or blueprints; and (4) tacitly or specifically indicates his reliance on the experience and skill of the contractor, after making known to him the specific purposes for which the building is intended.

*Dobler*, at 516. The existence of an implied warranty of fitness for the purpose in a construction contract, and the breach of the warranty, are findings of fact. *Air Heaters, Inc.*, at 654. The record supports the existence of the implied warranty of fitness for the purpose as a residence. The parties did not dispute the existence of an implied warranty for fitness as a residence at the district court, nor is the existence of an implied warranty disputed on appeal.

[¶ 11] K & L Homes argued fault was relevant to the Lenos' breach of implied warranties claim and requested to argue evidence on the Lenos' fault at trial. K & L Homes cited the statutory definition of fault, which includes

acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to tort liability or dram shop liability. The term also includes strict liability for product defect, *breach of warranty*, negligence or assumption of risk, misuse of a product for which the defendant otherwise would be liable, and failure to exercise reasonable care to avoid an injury or to mitigate damages. . . .

N.D.C.C. § 32–03.2–01 (emphasis added). K & L Homes argued the statutory definition of fault included breach of warranty language, and the breach of warranty language applied to the warranty of fitness for the purpose in construction contracts. The modified comparative fault statute provides that fault includes "product liability, including product liability involving negligence or strict liability or *breach of warranty for product defect.*" N.D.C.C. § 32–03.2–02 (emphasis added).

[¶ 12] The issues raised include the interpretation and application of the definition of fault and the modified comparative fault statute, and the "breach of warranty" language included in the statutes. "The interpretation and application of a statute is a question of law, which is fully reviewable on appeal." *Locken v. Locken*, 2011 ND 90, ¶ 9, 797 N.W.2d 301. In interpreting a statute, this Court's primary objective is to determine the legislature's intent. *Id.* We initially examine the statutory language. *Id.* Words used in a statute are to be understood in their ordinary sense, unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. "The letter of a statute cannot be disregarded under the pretext of pursuing its spirit when the language of the statute is clear and unambiguous." *Locken*, at ¶ 9 (citing N.D.C.C. § 1–02–05). "Statutes are construed as a whole and are harmonized to give meaning to related provisions." *Id.* (citing N.D.C.C. § 1–02–07). K & L Homes argued the broader definition of fault in N.D.C.C. § 32–03.2–01, referring to "breach of warranty," negated the more specific definition of fault under the modified comparative fault statute in N.D.C.C. § 32–03.2–02, which applies to "breach of warranty for product defect." However, in interpreting statutes, the specific should control the general. *Boumont v. Boumont*, 2005 ND 20, ¶ 15, 691 N.W.2d 278.

Further, K & L Homes argued both statutes applied to this fact situation. We disagree.

[¶ 13] The parties' arguments included different interpretations of the fault statutes and what breach of warranty claims were included for purposes of considering fault. K & L Homes argued fault is relevant in all breach of implied warranty actions because of the broad language in N.D.C.C. § 32–03.2–01. "A statute is ambiguous if it is susceptible to different, rational meanings." *Locken*, 2011 ND 90, ¶ 9, 797 N.W.2d 301 (quoting *Sauby v. City of Fargo*, 2008 ND 60, ¶ 8, 747 N.W.2d 65). "[I]f the language of a statute is ambiguous or of doubtful meaning or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, the court may resort to extrinsic aids to interpret the statute." *Id.* (quoting *Stutsman Cnty. v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D. 1985)). In determining the legislative intent of an ambiguous statute, a court may consider the object sought to be attained, the circumstances under which the statute was enacted, the legislative history, common law or former statutory provisions, or consequences of a particular construction. N.D.C.C. § 1–02–39.

[¶ 14] The introductory language to the definition of "fault" notes that it applies "[a]s used in" chapter 32–03.2. N.D.C.C. § 32–03.2–01. This Court has recognized, "The effect of the enactment of the comparative fault provisions was to significantly revise tort liability in this state to shift the focus from traditional doctrines to the singular, inclusive concept of fault." *Stewart v. Ryan*, 520 N.W.2d 39, 45 (N.D.1994) (citing *Champagne v. United States*, 513 N.W.2d 75, 79 (N.D.1994); *Erickson v. Schwan*, 453 N.W.2d 765, 768 (N.D.1990)). The source of the statutory definition of fault was 1987 N.D. Sess. Laws ch. 404, § 1 ("H.B.1571"). H.B. 1571 was entitled "Tort Liability." According to the legislative history, H.B. 1571 provided a modified comparative fault system for recovery of damages in all tort cases. "[B]reach of warranty for product defect" actions were subject to pure comparative fault. 1987 N.D. Sess. Laws ch. 404, § 3; *see Mauch v. Mfrs. Sales & Serv., Inc.*, 345 N.W.2d 338, 348 (N.D.1984); *Day v. Gen. Motors Corp.*, 345 N.W.2d 349, 357 (N.D.1984) (judicially adopting pure comparative fault for products liability and strict liability actions). Repeatedly throughout the legislative history of H.B. 1571, lawmakers stated the purpose of the bill was for tort reform. Written testimony indicates "fault is defined to cover all tort liability." The legislative history of H.B. 1571 made no mention of an intent to include fault concepts in breach-of-warranty contract actions.

[¶ 15] In 1993, the modified comparative fault provision of N.D.C.C. § 32–03.2–02 was amended so that instead of excluding products liability actions like "breach of warranty for product defect," such actions would be subject to modified comparative fault. 1993 N.D. Sess. Laws ch. 324, § 2 ("S.B. 2351"). S.B. 2351 was entitled "Tort Reform." The legislative history of S.B. 2351 indicates that products liability actions would be subject to modified comparative fault instead of pure comparative fault. There was no mention in the legislative history of an intent to apply fault to contract actions. "Breach of warranty" and "breach of warranty for product defect" were not defined, but the legislature was clearly concerned with tort liability and not contractual liability, and there was no expressed intent to mix tort and contract.

[¶ 16] K & L Homes' arguments would introduce tort concepts into contract law. "An action for breach of warranty is held

to sound sometimes in tort and sometimes in contract." *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 54 (Minn.1982) (quoting Unif. Comp. Fault Act § 1 comments (1977)); *see also* William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L.J. 1099, 1126–27 (June 1960). K & L Homes argued the cause of action in this case was identical to a tort cause of action. However, the cause of action falls under the judicially-recognized doctrine of implied warranty of fitness which arises from construction contracts. *Dobler*, 214 N.W.2d at 516. The cause of action was for economic loss due to the Lenos not receiving what they bargained for, which is a contractual obligation. *See* W. Page Keeton, *Prosser and Keeton on Torts*, 658–59, 680 (5th ed.1984). Though implied warranties are often described as sounding both in tort and contract law, we decline to apply a tort concept to a contractually-based implied warranty.

▆▆▆▆ [¶ 17] The modified comparative fault statute, by its language and legislative history, is intended to include breach of warranty claims in products liability actions. A products liability action is "any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design . . . ." N.D.C.C. § 28–01.3–01(2). This Court has never declared that a house affixed to real property is a product subject to a products liability action. *See* N.D.C.C. § 47–01–05 (defining a fixture). Further, under the economic loss doctrine in North Dakota, "economic loss resulting from damage to a defective product, as distinguished from damage to other property or persons, may be recovered in a cause of action for breach of warranty or contract, but not in a tort action." *Steiner v. Ford Motor Co.*, 2000 ND 31, ¶ 7, 606 N.W.2d 881 (citing *Hagert v. Hatton Commodities, Inc.*, 350 N.W.2d 591, 595 (N.D.1984)). Contract law, and not products liability tort law, "governs actions of persons seeking redress for damages when the injury is confined to the defective product itself, and neither persons nor other property are damaged." *Clarys v. Ford Motor Co.*, 1999 ND 72, ¶ 18, 592 N.W.2d 573; *see also Steiner*, at ¶ 7. The damage the Lenos alleged was to the house itself, and the economic loss doctrine would bar a products liability action in favor of a contract action even if the house were a product.

▆▆▆▆ [¶ 18] K & L Homes argues that this Court has stated that comparative fault applies to consequential damages resulting from a breach of implied warranty action under the Uniform Commercial Code ("U.C.C.") on a contract for grain. *Dakota Grain Co., Inc. v. Ehrmantrout*, 502 N.W.2d 234, 238 (N.D.1993) (citing *Peterson*, 318 N.W.2d at 53). However, implied warranties under the U.C.C. do not apply in this case. The U.C.C. applies to goods that are moveable at the time of identification. N.D.C.C. §§ 41–02–05(2); 41–02–02. A house affixed to real property is not a good that is moveable, and a contract does not become a contract for goods just because goods may be involved. *See, e.g., Air Heaters, Inc.*, 258 N.W.2d at 653 (citing *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir.1974) (to determine whether a contract is a contract for services with goods incidentally involved, or a contract for goods under the U.C.C. with services involved, this Court looks to the predominant purpose of the contract)). Further, in *Peterson*, which we cited in *Dakota Grain Co., Inc.*, the Minnesota Supreme Court recognized that comparative fault may apply to determine consequential

damages in a breach of warranty action, but does not apply to damages resulting directly from the loss of the product value, because those damages are contract damages. *Peterson,* at 54.

[¶ 19] Fault and modified comparative fault do not apply where the cause of action arises solely out of the contract between the parties, and the damages sought are for the loss of the expected bargain only. K & L Homes was allowed to present its evidence which it alleged showed the Lenos' "fault" as evidence K & L Homes had not breached the contract. Similar evidence may be available in implied warranty cases to show failure to give notice of defect and opportunity to cure, failure to mitigate damages, or similar contract defenses. However, such evidence would not have the effect intended by K & L Homes of allocating "fault" for purposes of determining whether the Lenos could recover under N.D.C.C. ch. 32–03.2. The district court did not err in refusing to allow K & L Homes to present arguments based upon fault to the jury, and the court did not err in refusing to instruct the jury on modified comparative fault.

### III

[¶ 20] K & L Homes argued the district court erred in deciding K & L Homes had not, as a matter of law, disclaimed any implied warranties. Prior to trial, K & L Homes agreed it would not argue any implied warranties were disclaimed. At trial, K & L Homes requested a jury instruction on implied warranties, and the district court instructed there was no disclaimer of warranties as a matter of law. K & L Homes then argued that it properly disclaimed implied warranties through the Homeowners' Guide the Lenos received at closing. The district court said the attempted disclaimer was ineffective because it was given at closing and was not a part of the basis of the bargain between the parties. "All warranties may properly be excluded, but that exclusion must be part of the bargain between the parties." *Darby v. Swenson Inc.,* 2009 ND 103, ¶ 17, 767 N.W.2d 147 (quoting *Fleck v. Jacques Seed Co.,* 445 N.W.2d 649, 654 (N.D.1989)). The closing date was merely the date to deliver possession of the property under the terms of the contract which had been executed several weeks earlier. The district court correctly decided K & L Homes had not, as a matter of law, disclaimed any implied warranties through the Homeowners' Guide the Lenos received at closing.

### IV

[¶ 21] K & L Homes argued it was arbitrary and capricious for the district court to deny its request to inspect the Lenos' house just before trial. K & L Homes also argued the district court erred by not allowing Kelly Moldenhauer, the owner of K & L Homes, to testify on his personal observations during the jury viewing of the Lenos' house.

[¶ 22] On August 9, 2009, K & L Homes made a request to inspect the Lenos' house, asking that Moldenhauer and Jim Skaret, an engineer and expert witness, be allowed to inspect the house. K & L Homes stated the request was *not* a motion under N.D.R.Civ.P. 34(a)(2), which allows a party to enter "onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." K & L Homes recognized there was insufficient time to make a motion under Rule 34(a)(2), because the discovery deadline had passed, but asked the district court to grant its "request for

entry for inspection" anyway. The court denied the request, stating "to the extent it might change his testimony, it doesn't seem reasonable at this point because [the Lenos] don't have a chance to do discovery on that."

[¶ 23] Essentially, K & L Homes was attempting to discover the current condition of the Lenos' house. "A district court has broad discretion regarding the scope of discovery, and its discovery decisions will not be reversed on appeal absent an abuse of discretion." *Investors Title Ins. Co. v. Herzig*, 2010 ND 169, ¶ 38, 788 N.W.2d 312 (quoting *Martin v. Trinity Hosp.*, 2008 ND 176, ¶ 17, 755 N.W.2d 900). "A party asserting the court abused its discretion in denying discovery carries a heavy burden." *Id.*

> An abuse of discretion by the district court is never assumed, and the burden is on the party seeking relief affirmatively to establish it. The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. The party seeking relief must show more than the district court made a "poor" decision, but that it positively abused the discretion it has under the rule. We will not overturn the district court's decision merely because it is not the decision we may have made if we were deciding the motion.

*Id.* (quoting *Martin*, at ¶ 17).

[¶ 24] K & L Homes has not met the heavy burden to establish the district court abused its discretion in denying the request to inspect the Lenos' house. The discovery deadline had passed, and the request was made twenty-two days prior to trial, with the hearing on the request held one week before trial. K & L Homes did not offer an explanation on why the request to inspect was brought so late. The district court denied the request out of concern for fairness—the Lenos would not have had a chance to prepare for any possible changes in the defendants' testimony or discover an opinion or theory of an expert witness. The current condition of the house was part of the evidence considered by the jury, as the jury had an opportunity to personally view the house. The district court did not abuse its discretion in denying K & L Homes' request to inspect the Lenos' house.

[¶ 25] K & L Homes also argued the court erred by refusing to let Moldenhauer, the owner of K & L Homes and a witness, to testify on his personal observations during the jury viewing. Under N.D.R.Ev. 103, a court's decision to admit or exclude evidence is not a reversible error unless the court's decision was objected to and the party's substantial rights were affected. "A party must object at the time the alleged error occurs to allow the district court to take appropriate action to remedy any prejudice that may have resulted." *Westby v. Schmidt*, 2010 ND 44, ¶ 12, 779 N.W.2d 681. A party may waive an objection by failing to object to the admission or exclusion of testimony. *Id.* "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." N.D.R.Civ.P. 61.

[¶ 26] The Lenos requested that the district court not allow Moldenhauer to testify on what he observed during the jury viewing of the house, because allowing that testimony would have had the same effect as if the court had granted K & L Homes' pretrial request for inspection. The district court stated it would not allow Moldenhauer to testify on his observations, and K & L Homes simply replied, "Okay." K & L Homes failed to object to the

court's decision to exclude Moldenhauer's testimony on his observations of the house during the jury viewing. K & L Homes also failed to show how its substantial rights were affected. The district court's decision to exclude Moldenhauer's testimony was not a reversible error.

## V

[¶ 27]  We affirm the judgment entered upon the jury verdict in favor of the Lenos and awarding damages.

[¶ 28] MARY MUEHLAN MARING, DANIEL J. CROTHERS, J.J., BENNY A. GRAFF, S.J., JOHN C. McCLINTOCK, JR., D.J., concur.

[¶ 29] The Honorable JOHN C. McCLINTOCK, JR., D.J., and the Honorable BENNY A. GRAFF, S.J., sitting in place of SANDSTROM, J., and VANDE WALLE, C.J., disqualified.