**2015 ND 131**

Michael and Jean CHEGWIDDEN, Plaintiffs and Appellants

v.

Mitch EVENSON, Elda Evenson Living Trust, and Evenson Properties, LLP, Defendants and Appellees.

No. 20140340.

Supreme Court of North Dakota.

May 27, 2015.

Timothy C. Lamb, Grand Forks, ND, for plaintiffs and appellants.

Kelsey A. Krapp, Bismarck, ND, for defendants and appellees.

KAPSNER, Justice.

[¶ 1]   Michael and Jean Chegwidden appeal from a district court judgment granting summary judgment in favor of Elda Evenson Living Trust, Mitch Evenson, and Evenson Properties, LLP (collectively "Evenson").   We conclude the district court did not err in granting Evenson's summary judgment motion, in denying the Chegwiddens' motion to amend, and in denying the Chegwiddens' summary judgment motion.   We affirm the judgment.

## I

[¶ 2] This case involves a landlord-tenant dispute between the Chegwiddens, as tenants, and Evenson, as landlord. In November 2011, the parties entered into a one-year written lease for a residential apartment in Minot, North Dakota. The parties did not .enter into a subsequent written lease, and it is undisputed that, after November 2012, it converted to a month-to-month tenancy.

[¶ 3] The Chegwiddens sent multiple text messages to Evenson complaining about smoke and noise in the apartment building. Evenson put up "No Smoking" signs throughout the building and, in December 2012, delivered a letter to all the building's tenants notifying them of the state's new smoking law and Evenson's voluntary election to prohibit smoking in or on the property. The Chegwiddens . sent a letter to Evenson, dated January 2, 2013, complaining about the smoke and noise in the building, noting "[t]his letter is to serve as notice. Should you continue to ignore our requests to provide a smoke free environment we will be forced to take legal action." On January 28, 2013, the Chegwiddens moved out of the apartment. Evenson first discovered the Chegwiddens had moved out on February 4, 2013. The Chegwiddens paid rent for December 2012 and January 2013, but did not pay rent for February 2013. Evenson sent the Chegwiddens a notice of non-return of the security deposit, contending notice of termination of the lease was not given and the security deposit, plus interest, was being applied to the February 2013 rent.

[¶ 4] In April 2013, the Chegwiddens sued Evenson alleging conversion, negligence, and intentional infliction of emotional distress, claiming Evenson wrongfully kept the security deposit, failed to stop smoking and noise in the apartment building, and failed to enforce the state's "Smoke–Free" law. Evenson counterclaimed for damages from the Chegwiddens' failure to give written notice of termination of the lease. In October 2013, the Chegwiddens moved for summary judgment, and the district court denied their motion. In December 2013, the Chegwiddens moved to amend the complaint, seeking to add a claim for punitive damages, and the district court denied their motion. In May 2014, Evenson moved for summary judgment; the district court granted Evenson's motion, dismissed the Chegwiddens' claims, and awarded Evenson costs and attorney fees.

## II

[¶ 5] On appeal, the Chegwiddens argue their multiple complaints regarding smoke and noise in the apartment building gave Evenson constructive or implied notice of their intent to move out, they had a right to sue for the negligent enforcement of the "Smoke–Free" law, and the district court erred in granting Evenson's summary judgment motion and denying the Chegwiddens' summary judgment motion and motion to amend.

## III

[¶ 6] The Chegwiddens argue the district court erred in granting Evenson's summary judgment motion.

[¶ 7] Summary judgment is the proper method to resolve a controversy without a trial if the evidence demonstrates there is no genuine issue as to any material fact or only questions of law remain, and a party is entitled to judgment as a matter of law. *Fetch v. Quam,* 2001 ND 48, ¶ 8, 623 N.W.2d 357. Evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Id.* This Court reviews whether a trial court properly granted

summary judgment under a de novo standard of review. *Id.*

## A

[¶ 8] The Chegwiddens argue the district court erred in granting Evenson's summary judgment motion and dismissing their claim for conversion. The Chegwiddens argue Evenson withheld their security deposit without reasonable justification and failed to comply with N.D.C.C. § 47–16–07.1(2), which requires a landlord to give a tenant written notice of any portion of the security deposit not refunded "within thirty days after termination of the lease and delivery of possession by the lessee."

[¶ 9] It is undisputed the tenancy renewed as a month-to-month tenancy after November 2012. *See* N.D.C.C. § 47–16–06 (residential lease presumed to renew as month-to-month tenancy if tenant remains in possession of property after lease's expiration and landlord accepts tenant's rent). In month-to-month tenancies, "unless the parties have otherwise agreed in writing . . . either party may terminate the tenancy by giving at least *one calendar month's written notice* at any time. The rent is due and payable to and including the date of termination." N.D.C.C. § 47–16–15(2) (emphasis added). "The legislature intended to require written notice if there is termination of a lease in order to eliminate confusion." *United Accounts, Inc. v. Teladvantage, Inc.,* 499 N.W.2d 115, 120 (N.D.1993) (citing Minutes of the House Industry, Business and Labor Committee on House Bill 1157, January 16, 1985).

[¶ 10] Upon termination of a lease, a landlord may apply the security deposit, plus accrued interest, towards any unpaid rent. N.D.C.C. § 47–16–07.1(2)(b). Section 47–16–07.1(2), N.D.C.C., requires a landlord to itemize the application of any portion of the security deposit not paid to the tenant, and:

> [s]uch itemization together with the amount due must be delivered or mailed to the lessee at the last address furnished lessor, along with a written notice within thirty days after termination of the lease and delivery of possession by the lessee. The notice must contain a statement of any amount still due the lessor or the refund due the lessee.

N.D.C.C. § 47–16–07.1(2). If a landlord withholds a security deposit without reasonable justification, he is liable for treble damages. N.D.C.C. § 47–16–07.1(3).

[¶ 11] The Chegwiddens moved out of the apartment at the end of January 2013. Evenson first learned the Chegwiddens moved out on February 4, 2013. Evenson provided the Chegwiddens with a written itemization, dated March 7, 2013, of the non-return of the security deposit. Evenson's itemization listed the date of delivery of possession as February 28, 2013 and noted that because the Chegwiddens did not provide notice of termination of the lease, the full security deposit, plus interest, was being retained and applied to the February 2013 rent.

[¶ 12] Because the Chegwiddens failed to provide written notice of termination of the month-to-month tenancy, Evenson argues the lease was presumed to renew for the month of February 2013. Evenson maintains it complied with N.D.C.C. § 47–16–07.1 because Evenson sent the Chegwiddens the security deposit itemization within thirty days of the Chegwiddens' termination of the lease, which Evenson argues was February 28, 2013.

[¶ 13] The Chegwiddens argue the determination of whether they provided sufficient notice of their intent to terminate the lease is a factual question, and a jury should determine whether their communications to Evenson satisfied the written

notice of lease termination requirement. Specifically, the Chegwiddens argue they gave Evenson constructive or implied notice of their intent to terminate the lease because of the multiple text messages they sent to Evenson as well as the letter, dated January 2, 2013, stating, "[t]his letter is to serve as notice. Should you continue to ignore our requests to provide a smoke free environment we will be forced to take legal action."

[¶ 14] The district court determined the record did not support the Chegwiddens' position that they gave constructive or implied notice of their intent to terminate the lease because the letter they sent to Evenson did not acknowledge their intent to terminate the lease, nor did it contain any statement which could be construed as an intent to terminate. The court also found the Chegwiddens' prior complaints of smoke and noise in the building did not serve as implied notice of intent to terminate the lease because "their argument is inconsistent with their own actions (i.e. continuing to pay rent and residing in the unit until January 2013)." Because the Chegwiddens "failed to provide notice of termination of their month to month tenancy," the district court determined Evenson was "legally permitted as a matter of law to apply [the Chegwiddens'] $300.00 security deposit toward unpaid rent pursuant to N.D.C.C. § 47–16–07.1(2)(b)."

[¶ 15] The record does not support the Chegwiddens' assertion that they provided constructive or implied notice to Evenson of their intent to terminate the lease. The Chegwiddens' text messages to Evenson only voiced complaints about smoke and noise in the building; the text messages did not state the Chegwiddens intended to terminate the lease, nor did the messages contain threats or allude to terminating the lease. The Chegwiddens' letter to Ev-

enson complained about smoke and noise in the building and stated, "[t]his letter is to serve as notice. Should you continue to ignore our requests to provide a smoke free environment we will be forced to take legal action." Although it is unclear what "legal action" the Chegwiddens were referring to, the letter cannot be construed as providing constructive or implied notice of their intent to terminate the lease.

[¶ 16] We conclude the Chegwiddens did not provide Evenson with sufficient written notice of their intent to terminate the lease as required under N.D.C.C. § 47–16–15(2). Because the Chegwiddens did not provide sufficient written notice of termination of the lease and Evenson did not discover they had moved until February 4, 2013, we conclude the district court did not err in concluding Evenson's withholding of the security deposit was legally permissible and reasonably justified as a matter of law, and the court did not err in concluding Evenson complied with N.D.C.C. § 47–16–07.1 by sending the Chegwiddens an itemization of the security deposit within thirty days of the lease's termination at the end of February. The district court did not err in granting Evenson's summary judgment motion and dismissing the Chegwiddens' conversion claim.

B

[¶ 17] The Chegwiddens argue the district court erred in granting Evenson's summary judgment motion and dismissing their negligence claims. The Chegwiddens argue they had a right to sue for the negligent enforcement of the "Smoke–Free" law because Evenson knew or should have known about the smoking in the building's common areas and did nothing to prevent it.

[¶ 18] "In a negligence action, the plaintiff must prove (1) duty; (2)

breach of that duty; (3) causation and (4) damages." *Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 8, 766 N.W.2d 458. When a duty does not exist, there is no negligence. *Collette v. Clausen*, 2003 ND 129, ¶ 11, 667 N.W.2d 617. Ordinarily, negligence actions are not appropriate for summary judgment; however, the determination of whether a duty exists is generally a "preliminary question of law for the court to decide." *Id.* at ¶ 12. "If the existence of a duty depends upon factual determinations, the facts must be determined by the fact finder. Issues of fact, however, may become issues of law for the court, if reasonable persons could reach only one conclusion from the facts." *Id.*

[¶ 19] The Chegwiddens argue the "Smoke–Free" law "places a duty on the building manager to police the premises" from persons violating the law. The Chegwiddens argue Evenson "knew or should have known of the smoking" in the building, and Evenson "failed to comply with the law by removing those persons from the building or informing law enforcement."

[¶ 20] In December 2012, North Dakota's "Smoke–Free" law became effective, prohibiting smoking in certain areas, including all enclosed areas of public places. N.D.C.C. § 23–12–10(1)(a). A "public place" includes "any common areas in apartment buildings." N.D.C.C. § 23–12–09(11). However, private residences are exempted from the smoking restrictions. N.D.C.C. § 23–12–10(3)(a). Under the "Smoke–Free" law, the "owner, operator, manager, or other person in control of a public place" where smoking is prohibited, must clearly and conspicuously post no smoking signs in that place, remove ashtrays from areas where smoking is prohibited, and direct a person who is smoking in violation of the law to extinguish the product being smoked. N.D.C.C. § 23–12–10.4(1). "If the person in violation refuses to leave the premises, the owner, operator, manager, or employee shall immediately report the violation to an enforcement agency." N.D.C.C. § 23–12–10.4(1)(e). "The refusal of the person to stop smoking or leave the premises in response to requests made under this section by an owner, operator, manager, or employee shall not constitute a violation of the Act by the owner, operator, manager, or employee." *Id.*

[¶ 21] The district court determined in order for Evenson to be held liable for a violation of N.D.C.C. § 23–12–10.4(e), the Chegwiddens "must present evidence that [Evenson] witnessed the 'no smoking' violation and that [Evenson] failed to ask the violators to leave the premises." The court noted the Chegwiddens provided no evidence that Evenson "personally witnessed smoking in the common area and that [Evenson] failed to take corrective measures." Because the Chegwiddens did not "provide[ ] sufficient evidence for a reasonable jury to find in their favor," Evenson's summary judgment motion as to whether Evenson breached its duty to eradicate smoking in the common area was granted by the district court.

[¶ 22] It is undisputed no ashtrays were present in the building, Evenson placed no smoking signs throughout the building and distributed a letter to tenants advising them of the new law, and Evenson voluntarily elected to prohibit smoking in or on the property. Under the facts as presented, there was no evidence that Evenson failed in any duty that Evenson would have under the "Smoke–Free" law.

[¶ 23] Because the Chegwiddens did not raise a material issue of fact regarding Evenson's duty under the "Smoke–Free" law, we conclude the district court did not err in granting Evenson's summary judg-

ment motion and dismissing the Chegwiddens' negligence claims.

C

[¶ 24] The Chegwiddens argue the district court erred in granting Evenson's summary judgment motion and dismissing their claim for intentional infliction of emotional distress.

[¶ 25] The elements for intentional infliction of emotional distress are "extreme and outrageous conduct that is intentional or reckless and causes severe emotional distress." *Kautzman v. McDonald*, 2001 ND 20, ¶ 18, 621 N.W.2d 871. The conduct must exceed "all possible bounds of decency." *Id.* (citation omitted). Initially, the court determines if a defendant's conduct may reasonably be regarded as extreme and outrageous. *Dahlberg v. Lutheran Soc. Servs. of N.D.*, 2001 ND 73, ¶ 21, 625 N.W.2d 241. If reasonable people could differ regarding whether the defendant's conduct is extreme and outrageous, a plaintiff is entitled to have the trier of fact determine whether the conduct was sufficiently extreme and outrageous. *Kautzman*, at ¶ 19.

[¶ 26] The Chegwiddens argue Evenson was notified many times of the smoking problem in the apartment building and did nothing beyond posting no smoking signs, and a jury should determine the factual issue of whether Evenson's conduct was extreme and outrageous.

[¶ 27] The district court determined, although Evenson's actions "may have been offensive" to the Chegwiddens, their "feelings are not the standard to which the Court is obligated." The court went on to state, it is "not convinced that [Evenson's] conduct . . . rises to the strenuous requirements of beyond all possible bounds of decency."

[¶ 28] We agree with the district court that Evenson's alleged conduct could not reasonably be interpreted as extreme and outrageous. *See Lucas v. Riverside Park Condominiums Unit Owners Ass'n*, 2009 ND 217, ¶ 32, 776 N.W.2d 801 (allegations of verbal and physical threats were not sufficient to support an action for intentional infliction of emotional distress); *Vandall v. Trinity Hospitals*, 2004 ND 47, ¶¶ 3, 30, 676 N.W.2d 88 (claims of retaliation did not meet threshold for extreme and outrageous conduct). Liability for intentional infliction of emotional distress does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Weiss v. Collection Ctr., Inc.*, 2003 ND 128, ¶ 21, 667 N.W.2d 567 (citation omitted). We conclude the district court did not err in dismissing the Chegwiddens' claim for intentional infliction of emotional distress.

IV

[¶ 29] The Chegwiddens argue the district court abused its discretion in denying their motion to amend the complaint to claim punitive damages. A district court has broad discretion in determining whether to allow amended pleadings after the time for amendments has passed. *Thimjon Farms P'ship v. First Int'l Bank & Trust*, 2013 ND 160, ¶ 28, 837 N.W.2d 327. We review such decisions under the abuse of discretion standard. *Id.* It is not an abuse of discretion to deny a motion to amend if the proposed amendment would be futile; an amendment is futile if the proposed claim would not survive a summary judgment motion. *Id.*

[¶ 30] The Chegwiddens filed their motion to amend the complaint 60 days past the parties' stipulated deadline for amending the pleadings. Noting the motion's untimeliness, the district court denied the

Chegwiddens' motion. The Chegwiddens acknowledge their motion was untimely, but argue there was no prejudice to the opposing party to consider the motion, and the court did not address this issue.

[¶ 31] In *Brandt v. Somerville,* 2005 ND 35, ¶¶ 26–27, 692 N.W.2d 144, the trial court denied a pretrial motion to amend the complaint because it found the defendants' alleged actions did not rise to the level of oppressive or malicious conduct. The trial court also denied a renewed motion to amend the complaint concluding "there had not been a sufficient showing of conduct that would warrant exemplary damages." *Id.* at ¶ 27. This Court concluded the trial court's denial of the motion to amend was "the product of a rational mental process and was not arbitrary, unreasonable, or unconscionable, or a misapplication of the law." *Id.*

[¶ 32] The district court in this case noted the untimeliness of the motion and, like in *Brandt,* it stated even if the motion had been submitted in a timely matter, it would *"not* be inclined to grant [the motion] as [Evenson's] alleged actions do not rise to the level required to support a claim for oppression or actual malice." (Emphasis in original).

[¶ 33] We conclude the district court's denial of the Chegwiddens' motion to amend their complaint to seek punitive damages was the product of a rational mental process and was not arbitrary, unreasonable, unconscionable, or a misapplication of the law. We conclude the district court did not abuse its discretion in denying the Chegwiddens' motion to amend.

[¶ 34] Other issues raised by the Chegwiddens need not be addressed, because they are not necessary for resolving this appeal. *Martin v. Berg,* 2005 ND 108, ¶ 15, 697 N.W.2d 723 ("We need not address questions, the answers to which are unnecessary for the determination of an appeal.").

## V

[¶ 35] We conclude the district court did not err in granting Evenson's summary judgment motion, in denying the Chegwiddens' motion to amend, and in denying the Chegwiddens' summary judgment motion. We affirm the judgment.

[¶ 36] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS and DALE V. SANDSTROM, JJ., concur.

CROTHERS, Justice, concurring in the result.

[¶ 37] The underlying relationship between the Chegwiddens and Evenson is based on a written lease and a statutory month-to-month extension of that contract. Majority opinion at ¶ 2. Yet the Chegwiddens assert no claims sounding in breach of contract. They instead attempt to advance tort claims for conversion, negligence, intentional infliction of emotional distress and punitive damages. *Id.* at ¶¶ 8, 17, 24 and 29.

[¶ 38] The economic loss doctrine limits the Chegwiddens' recovery to breach of contract damages unless they can establish injury to persons or other property. *See Leno v. K & L Homes, Inc.,* 2011 ND 171, ¶ 17, 803 N.W.2d 543 ("Further, under the economic loss doctrine in North Dakota, 'economic loss resulting from damage to a defective product, as distinguished from damage to other property or persons, may be recovered in a cause of action for breach of warranty or contract, but not in a tort action.'") (quoting *Steiner v. Ford Motor Co.,* 2000 ND 31, ¶ 7, 606 N.W.2d 881).

[¶ 39] Under the economic loss doctrine, the Chegwiddens' conversion claim is precluded. Not precluded under the doc-

trine is intentional infliction of emotional distress claiming injury to a person. On that claim, I agree with the majority's disposition. Majority opinion at ¶ 28. I also agree with dismissal of the punitive damage claim, but for a reason different than the majority. *Id.* at ¶ 33. Punitive damages are not recoverable in contract actions. N.D.C.C. § 32–03.2–11(1) ("In any action for the breach of an obligation not arising from contract ... the court or jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."). Here, no non-contract claim supported the Chegwiddens' punitive damage claim. Therefore, denial of the motion to amend the complaint was not an abuse of discretion.

[¶ 40] The only other *possible* exception to application of the economic loss doctrine is the Chegwiddens' claim for "negligent enforcement of the 'Smoke–Free' law." Majority opinion at ¶ 17. The majority concludes the claim was properly dismissed on summary judgment for lack of a duty. *Id.* at ¶ 22. That legal analysis is not wrong, but it presumes they have a claim to assert. I would rather follow the district court and determine whether the North Dakota Smoke–Free law granted a private right of action for enforcement. The district court held, "Because N.D.C.C. § 23–12–11 specifically provides that violations of the 'smoke free' law results in fines, it is the Court's position that the legislature did not create or intend to create a private right of action." I agree.

[¶ 41] I would hold the district court did not err in determining the legislature did not intend to create a private right of action under the Smoke–Free law. The statute is silent regarding such a right, and the legislature expressly provided remedies for violations. *See* N.D.C.C. § 23–12–11 (owner of public place who willfully violates Smoke–Free law is guilty of an infraction and subject to fines). Because the Chegwiddens have no private right of action to enforce the Smoke–Free law, their claim denominated as "negligence" fails and summary judgment was properly granted.