2008 ND 176

**Dr. Larry MARTIN, Plaintiff, Appellant and Cross– Appellee**

v.

**TRINITY HOSPITAL, Defendant, Appellee and Cross– Appellant.**

No. 20070329.

Supreme Court of North Dakota.

Sept. 23, 2008.

Lynn M. Boughey, Boughey Law Firm, Bismarck, N.D., for plaintiff, appellant and cross-appellee.

Matthew H. Olson, Pringle & Herigstad, P.C., Minot, N.D., for defendant, appellee and cross-appellant.

MARING, Justice.

[¶ 1] Larry Martin appeals from a district court judgment dismissing his action against Trinity Hospital ("Trinity") for breach of an employment contract, and Trinity cross-appeals. We reverse and remand for further proceedings limited strictly to whether Trinity breached a contract of employment and whether, as a result of the breach, Martin is entitled to an additional month of severance pay.

I

[¶ 2] In December 1995, Trinity hired Martin, an audiologist, to start an audiology department at the hospital. The parties entered into a written contract for a two-year term of employment. Under the 1995 contract, Martin's base salary was $50,000 annually, with a production bonus of 40 percent of net cash receipts in excess of $75,000 the first year of the contract and 40 percent of the net cash receipts in excess of $80,000 the second year. When the contract expired, Martin continued running the audiology department and received the same annual salary and production bonuses. The parties continued in this manner, without a written employment agreement, from 1997 until 2001.

[¶ 3] In 2001, the parties discussed changing the terms of Martin's employment. On March 5, 2001, the parties entered into a written employment agreement for a two-year term, commencing March 1, 2001, with Martin to receive an annual salary of $55,000 plus a production bonus of 40 percent of net cash receipts in excess of $90,000 during each year of the contract. The contract specified that either party could terminate the agreement upon 60 days prior written notice.

[¶ 4] Through February 2003, Trinity provided monthly financial statements to Martin detailing receipts and expenses for the audiology department. When Trinity ceased providing the monthly statements, Martin made several inquiries but did not receive what he considered a satisfactory explanation of Trinity's discontinuation of the monthly statements. Finally, on December 4, 2003, Trinity advised Martin that his position was being eliminated. Martin was given one month of severance pay in the amount of $4,583, one-twelfth of his $55,000 annual salary. He did not receive any production bonus for the months of March through December 2003.

[¶ 5] In May 2006, Martin sued Trinity for breach of his employment contract, seeking his production bonus for 2003 and an additional $4,583 in severance pay. Trinity moved for summary judgment, arguing the 2001 contract had expired on February 28, 2003, and Trinity therefore did not owe Martin a production bonus after that date and had not breached the contract. The district court denied Trinity's motion for summary judgment.

[¶ 6] In March 2007, the district court, after conducting a scheduling hearing, issued an order requiring: (1) that Martin complete all written discovery on fact issues by April 30, 2007, and all written discovery on expert reports by June 30, 2007; (2) that Trinity complete all written discovery on fact issues by May 31, 2007, and all written discovery on expert reports

by July 15, 2007; (3) that Martin complete all depositions of fact witnesses and experts by June 30, 2007; (4) that Trinity complete all fact witness depositions by June 30, 2007, and all expert witness depositions by July 31, 2007; and (5) that each party submit a final pretrial statement, including a final witness list and final exhibit list, by August 13, 2007.

[¶ 7] In accordance with the scheduling order, Trinity's counsel contacted Martin's counsel in April 2007 to schedule a deposition of Martin. Martin's counsel informed Trinity that Martin would not be available during the school year, but did not provide Trinity with any alternate dates when Martin would be available. In May 2007, Trinity again asked for available dates to take Martin's deposition, and again Martin's counsel failed to provide any available dates.

[¶ 8] On May 9, 2007, Trinity served interrogatories on Martin. When Martin failed to timely submit answers to the interrogatories or request an extension of time, Trinity's counsel sent a July 9, 2007, letter requesting answers to the interrogatories and advising Martin that Trinity would schedule his deposition for August 7, 2007, unless Martin provided an alternate date. Martin's attorney responded by letter dated July 10, 2007, in which he: (1) requested an extension of time to submit answers to the interrogatories; (2) noted that the time for Trinity to depose Martin had expired on June 30, 2007, but suggested all discovery be extended to August 20, 2007; (3) suggested alternate dates for depositions; and (4) indicated that, if Trinity deposed Martin, he would "need to depose the individuals in Trinity that have knowledge in regards to this matter." On July 11, 2007, Trinity served a notice to take Martin's deposition on August 14, 2007, one of the dates suggested by Martin's attorney in his July 10

letter. Also on July 11, 2007, Trinity's attorney wrote to Martin's attorney agreeing to an extension of time to file answers to interrogatories but challenging Martin's attorney's assertion that Trinity had missed the deadline for depositions, noting that Trinity had extended professional courtesy and attempted to accommodate the schedules of Martin and his attorney when setting Martin's deposition. On August 3, 2007, Martin's attorney sought to schedule a deposition of Trinity's records custodian for the same day as Martin's deposition. Trinity's counsel advised Martin that the discovery deadline had passed and he would not agree to the deposition.

[¶ 9] On August 8, 2007, Martin filed a motion for a protective order, arguing the discovery deadline had passed. He therefore requested an order prohibiting the deposition of Martin except upon mutual agreement of the parties. On August 9, 2007, Martin finally served answers to the interrogatories. That same day Trinity filed a motion to compel discovery, arguing Martin's answers to the interrogatories were incomplete. Trinity also objected to Martin's attempt to schedule a deposition of Trinity's records custodian. While the discovery motions were pending, Martin traveled to North Dakota from Oregon and Trinity deposed him on August 14, 2007.

[¶ 10] The district court subsequently issued its order on the discovery motions, ordering Martin to provide more complete answers to interrogatories regarding his calculation of the damages he alleged he was owed. On the issue of the disputed depositions, the court concluded:

> The Court has no information before it to know whether either, both, or none of the recently scheduled depositions have taken place. Either party may renew their motions with regard to these depositions by providing additional information.

The court in its order also sternly chastised Martin's counsel:

> Lastly, Martin would be advised that he is playing with fire by his cavalier attitude toward the rules. The rules contemplate full and fair disclosure. The Court has broad discretion with regard to the imposition of sanction[s] against a party who plays fast and loose with those rules. Trial by ambush will not be condoned, nor does the Court intend to hold a jury for hours on end while counsel conducts courtroom discovery which should have been completed in the more than 15 months since this action was filed. If at trial it appears that Martin attempts to introduce into evidence anything that should have been produced in discovery but was not, upon request of Trinity the Court will fashion the appropriate sanction which could, at the extreme, constitute a dismissal of part, or all of Martin's claims.

[¶ 11] A jury trial was scheduled to begin on Monday, September 10, 2007. On August 31, 2007, the Friday before the Labor Day holiday weekend, Martin's attorney sent to Trinity's attorney eight separate subpoenas directed to Trinity and various employees, doctors, and officers, ordering them to appear at the trial and produce certain enumerated evidence. The subpoenas sought production of twenty-nine separate categories of documents, some dating back more than ten years. Trinity objected to the subpoenas, and the district court ordered that they be quashed.

[¶ 12] Because Martin had failed to submit a pretrial list of witnesses or exhibits as required by the court's scheduling order, Trinity at the outset of trial moved to preclude Martin from calling any witnesses or offering any exhibits at trial. The court ordered Martin would be permitted to testify and his two written employment contracts could be offered as exhibits, but no other witnesses or exhibits would be allowed.

[¶ 13] Because Martin had conducted no discovery and had not obtained records showing his actual cash receipts after February 2003, he could not produce evidence of the actual figures which would have been used to calculate his production bonus after that date. Instead, Martin testified at trial that the last two monthly financial reports he received, for January and February 2003, showed gross receipts of $37,346 and $54,909, respectively. He explained the January number was lower because he had been out of the country on a medical mission a few months earlier, and that the February number was representative of what his average monthly gross receipts would have been for the rest of 2003. Martin thus used a monthly figure of $50,000 in gross receipts to estimate his receipts for the remainder of the year, and estimated deductions for cost of goods and returns by extrapolating quarterly numbers from an earlier period to calculate the estimated production bonus he claimed he was owed for 2003. Martin also claimed additional bonus amounts for hospital-based charges and accounts receivable, resulting in a total production bonus claimed for 2003 in the amount of $208,000. Adding the $4,583 additional severance pay he claimed he was owed, Martin testified his damages totaled $212,583. On cross-examination, Martin conceded that his average production bonus for the preceding four years had been $22,000. Martin attempted to explain the difference, testifying that his caseload had substantially increased and he was working much harder in 2003 than in prior years.

[¶ 14] At the close of Martin's case-in-chief, Trinity moved for judgment as a matter of law, arguing Martin had failed to

establish a breach of contract. The court overruled the motion on those grounds. Trinity then asserted that Martin had specified in his complaint damages of $75,000, but now claimed damages in excess of $200,000. The court at that point expressed its concern that Martin had not presented evidence of clearly ascertainable damages, as required to prevail in a breach of contract action. After allowing the parties to address the issue, the court concluded Martin had not met his burden of showing clearly ascertainable damages and granted judgment as a matter of law dismissing Martin's claims.

[¶ 15] Martin appealed from the judgment dismissing his action, and Trinity cross-appealed.

## II

[¶ 16] Martin contends the district court abused its discretion in not requiring or allowing pretrial discovery and in quashing Martin's subpoenas.

[¶ 17] A district court has broad discretion regarding the scope of discovery, and its discovery decisions will not be reversed on appeal absent an abuse of discretion. *Bertsch v. Bertsch*, 2007 ND 168, ¶ 10, 740 N.W.2d 388. Similarly, a district court's decision to quash a subpoena will only be reversed if the court abused its discretion. *Nesvig v. Nesvig*, 2006 ND 66, ¶ 12, 712 N.W.2d 299. We have outlined the heavy burden placed upon a party alleging an abuse of discretion:

> An abuse of discretion by the district court is never assumed, and the burden is on the party seeking relief affirmatively to establish it. The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. The party seeking relief must show more than the district court made a "poor" decision, but that it positively abused the discretion it has under the rule. We will not overturn the district court's decision merely because it is not the decision we may have made if we were deciding the motion.

*Id.* at ¶ 12 (citations omitted).

[¶ 18] Martin complains that he was not allowed to take a deposition of Trinity's records custodian, yet Trinity was allowed to depose Martin. The record in this case, however, demonstrates that Martin attempted to play a "cat and mouse" game with discovery. This action was commenced in May 2006, and Martin had more than a year to conduct discovery before the deadlines in the district court's scheduling order expired. Despite now claiming a need for voluminous documents from Trinity, Martin conducted absolutely no discovery. When Trinity made multiple attempts, beginning in April 2007, to arrange Martin's deposition, Martin requested that Trinity accommodate his schedule but refused to provide dates he would be available. Despite Trinity's extension of professional courtesy to accommodate Martin, Martin attempted to cry "gotcha" when the scheduling deadline passed without the parties agreeing to a date for Martin's deposition. Despite never having previously indicated a desire to depose any representative of Trinity or engage in any other discovery, Martin then suggested he would only submit to his deposition if he were allowed to depose Trinity's records custodian.

[¶ 19] Furthermore, we note that the district court did not preclude Martin from taking the deposition. In its August 22, 2007, order, the court indicated it had not been informed whether the deposition had taken place and stated the parties were

free to renew their motions on the depositions. Martin did not renew his motion.

[¶ 20] We agree with the district court's characterization of Martin's "cavalier attitude toward the rules," its suggestion that Martin had played "fast and loose" with the discovery rules and might attempt to engage in "[t]rial by ambush," and its concern that Martin would conduct "courtroom discovery which should have been completed in the more than 15 months since this action was filed." We conclude the district court did not abuse its discretion in its decisions regarding discovery.

■ [¶ 21] Martin also claims the district court erred in quashing subpoenas directing various Trinity employees, doctors, and officers to appear at trial and produce enumerated categories of records. The district court aptly summarized the circumstances, breadth, and scope of these subpoenas in its order quashing them:

> Trinity objects to eight subpoenas directed to Trinity, as well as to Trinity employees, physicians, and officers. Each subpoena seeks information in twenty-nine separate categories. Some of the information sought dates to 1995, through 2004. Some seek information from 1996, through 2004. Some of the demands contain no date restrictions at all. Many of the demands seek information of a no doubt voluminous nature, such as all records for the Trinity operating room for the year 2003; all documents related to hearing aid sales by Martin (without time restriction); as well as documents related to insurance, medicare, and medicaid billings and payments received and related to Martin's work in 2003, and other years.
>
> While the subpoenas are all dated August 31, 2007, there is nothing to show how the subpoenas were served, whether by mail, fax, or personal service.

Counsel for Trinity asserts the documents merely "appeared" at his office on September 4, three working days before the start of trial, and before the documents were required to be produced. Martin's counsel asserts the documents were served on August 31, ten days before trial. Again, no proof of service was provided. But even if the Court accepts Martin's assertion of service, the Court notes that August 31, was the Friday before the Labor Day holiday week end, effectively giving Trinity only four working days to scour its records and assemble the mass of records Martin now wants.

[¶ 22] Under N.D.R.Civ.P. 45(b)(1)(A), a subpoena to a named person must be served by personal service under N.D.R.Civ.P. 4(d). Furthermore, a court must quash a subpoena if it "fails to allow reasonable time for compliance" or "subjects a person to undue burden." N.D.R.Civ.P. 45(c)(4). The district court in this case fully addressed these issues and concluded that Martin had failed to show the subpoenas had been served and that the subpoenas failed to allow a reasonable time for compliance and subjected the persons subpoenaed to undue burdens.

[¶ 23] Martin argues that the mere fact he chose not to conduct discovery does not preclude him from issuing trial subpoenas under N.D.R.Civ.P. 45 directing witnesses to produce evidence:

> Dr. Martin is not required to obtain the documents necessary for trial prior to trial. Dr. Martin has every right through the subpoena power to simply spend his time and efforts and money on requiring Trinity to bring the documents to trial. . . .
>
> It would not be appropriate policy under North Dakota Law for every party to be required to conduct discovery, and

if discovery is not conducted that any subpoena's [sic] issued asking that the documents at issue be ignored at trial. In other words, there is no rule and there should be no policy that provides that if you do not conduct discovery the rules relating to subpoena power to get the evidence at trial cannot be employed.

[¶ 24] Martin is correct, up to a point. The mere fact a document has not been previously obtained in discovery does not automatically preclude issuance of a subpoena to produce the document at trial. The problem in this case, and the basis for the district court's order, was the timing, scope, and breadth of Martin's requests. We agree with the district court's assessment:

Trial by ambush, and last minute oppression do not comport with notions of fairness, or due process. Martin had ample opportunity to conduct discovery and seek these mass of documents well in advance of trial. He opted not to do this. Instead, he waited until the very eve of trial to conduct his discovery, and prepare for trial.

If the Court allowed these subpoenas to go forward, it would unfairly handicap Trinity, requiring it to scramble at the last minute to obtain these documents. Instead of focusing on its defense, Trinity is forced to focus on Martin's late demands. Martin does not even attempt to identify which of the many documents he seeks will be used as exhibits at trial. He asserts only a generalized statement of his need for the documents. Requiring Trinity to gather up all of the documents Martin wants at this late moment, without so much as a minimal showing by Martin that the documents will be used at trial puts Trinity at a severe disadvantage.

Further, Martin does not attempt to explain to the Court how he could possibly make any meaningful use of the documents at trial. The Court certainly does not intend to delay this trial, or subject the jury to many hours of wasted time, while counsel for Martin reviews 29 separate categories of hospital records, some of them now a decade or more old, to glean from them the documents he thinks may exist in support of his case. Indeed, without discovery, Martin can have no idea what many of the items he requests might reveal. He seeks, for example, private e-mail correspondence. He seeks pay information for another physician. He seeks productivity reports for another physician. Without discovery, Martin has no idea what these documents might reveal. Martin's counsel will presumably be reviewing and using the documents "on the fly." A jury's time is a precious commodity, and the Court does not intend to make the jury squander its time because Martin did not take advantage of pretrial discovery tools. . . .

The power to subpoena is not a substitute for proper discovery, nor does it allow a party the right to sweep up any and all discovery at the virtual late minute.

[¶ 25] While the subpoena power to require production of documents at trial under N.D.R.Civ.P. 45 serves a legitimate purpose, it is an abuse of the rule to, mere days before the trial, seek production of hundreds or thousands of documents which the requester has never seen and which may or may not eventually be found relevant to some issue in the case. That is the purpose of pretrial discovery. We agree with the district court that the attempted use of overbroad and burdensome trial subpoenas on the eve of trial is an improper substitute for orderly pretrial discovery.

[¶ 26] We conclude the district court did not abuse its discretion when it quashed the subpoenas.

### III

[¶ 27] Martin argues the district court erred in concluding that he had not provided evidence of clearly ascertainable damages, and it was therefore error to grant judgment as a matter of law dismissing his action.

[¶ 28] The district court has the authority to grant judgment as a matter of law dismissing a party's claim if the party fails to present sufficient evidence on an essential element of the claim:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

N.D.R.Civ.P. 50(a)(1). The district court's decision to grant or deny a motion for judgment as a matter of law under N.D.R.Civ.P. 50 is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. *In re Estate of Stave*, 2007 ND 53, ¶ 11, 729 N.W.2d 706; *Dahl v. Messmer*, 2006 ND 166, ¶ 14, 719 N.W.2d 341; *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450. On appeal, the district court's decision on a motion for judgment as a matter of law is fully reviewable. *Estate of Stave*, at ¶ 11; *Dahl*, at ¶ 14; *Symington*, at ¶ 4.

[¶ 29] A party alleging a breach of contract has the burden of proving (1) the existence of a contract, (2) a breach of the contract, and (3) damages which flow from the breach. *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 13, 730 N.W.2d 841. Under N.D.C.C. § 32–03–09, "[n]o damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin."

[¶ 30] Although damages must be "clearly ascertainable," this Court has noted that, where it is reasonably certain substantial damage has resulted, mere uncertainty as to the exact amount will not preclude recovery. *See Langer v. Bartholomay*, 2008 ND 40, ¶ 27, 745 N.W.2d 649; *Farmers Ins. Exch. v. Schirado*, 2006 ND 141, ¶ 17, 717 N.W.2d 576; *Livinggood v. Balsdon*, 2006 ND 11, ¶ 8, 709 N.W.2d 723; *Keller v. Bolding*, 2004 ND 80, ¶ 21, 678 N.W.2d 578. In cases where no definite evidence of an exact amount of damage exists, we allow proof by the best evidence available:

> "[W]here damage obviously has been suffered, but there is no definite evidence available for an exact determination of the amount of damage resulting from a breach of contract, the best evidence which the circumstances will permit is all the law requires."

*Langer*, at ¶ 27 (quoting *Livinggood*, at ¶ 8); *see also Schirado*, at ¶ 17; *Keller*, at ¶ 21; *North Am. Pump Corp. v. Clay Equip. Corp.*, 199 N.W.2d 888, 891 Syll. ¶ 6 (N.D.1972). This Court has therefore concluded that, in cases "where the amount of damages may be hard to prove, the amount of damages is to be left to the sound discretion of the finder of facts." *Keller*, at ¶ 21 (quoting *B.W.S. Invs. v. Mid–Am Rests., Inc.*, 459 N.W.2d 759, 764

(N.D.1990)); *see also Langer,* at ¶ 27; *Schirado,* at ¶ 17.

[¶ 31] Our prior cases allowing proof of damages by evidence which may be imprecise have noted that application of this "best evidence" rule is limited to cases where proof of the amount of damages will be difficult and "there is no definite evidence available for an exact determination of the amount of damage resulting from [the] breach of contract." *Langer,* at ¶ 27; *Schirado,* at ¶ 17; *Livinggood,* at ¶ 8; *Keller,* at ¶ 21. The import of the holding in those cases is that a plaintiff may offer inexact evidence on the amount of damages in a breach of contract action only if there is no definite evidence available for an exact determination of the damages resulting from the breach.

[¶ 32] In this case there clearly was definite, exact evidence available, but Martin failed to conduct any discovery to produce that evidence. It would have been a simple matter for Martin to request production of the documents showing his monthly net cash received. Instead, because of Martin's questionable discovery and procedural tactics, he was unable to present that evidence to the jury. He now claims it was sufficient to provide guesses and speculation about the amount of net cash received in 2003 based upon his estimates of how hard he worked and how many patients he saw. Such evidence is far too speculative for determination of damages when he could have discovered the exact amounts allegedly due under the contract with a simple request for production of the documents containing the relevant figures. Under our caselaw, Martin's guesses and speculation can hardly be considered the "best evidence" of Martin's alleged damages resulting from Trinity's failure to pay his 2003 production bonus.

[¶ 33] Martin's inability to present definite evidence of an exact amount of damages flowing from the breach did not result because such evidence did not exist, but rather was the direct result of Martin's questionable pretrial tactics. Under these circumstances, the district court did not err in concluding that Martin had failed to present sufficient evidence to allow the jury to determine the amount of damages, if any, resulting from Trinity's refusal to pay Martin a production bonus for 2003.

[¶ 34] Although Martin failed to present sufficient evidence of the amount of the production bonus he claimed was due, Martin did present sufficient evidence on his other claim of damage-Trinity's failure to pay him a second month of severance pay. Martin presented evidence that the 2001 written contract required 60 days written notice for termination, and the jury could have found that Martin was therefore entitled to two months of severance pay following his December 2003 termination. Accordingly, we conclude it is necessary to reverse the judgment dismissing Martin's action and remand for further proceedings limited strictly to the issue whether Martin is entitled to an additional month of severance pay.

IV

[¶ 35] Martin contends the district court improperly became an advocate on behalf of Trinity when it raised the issue of uncertainty of damages under N.D.C.C. § 32–03–09 during discussions on Trinity's N.D.R.Civ.P. 50 motion for judgment as a matter of law. Martin contends the court "essentially [became] the lawyer for Trinity, initiating the issue, framing the argument, and then ruling in favor of what was in reality the Court's own motion."

[¶ 36] Martin has greatly exaggerated and mischaracterized the district court's actions. The district court did not, as Martin suggests, raise this issue out of the

blue and make its own motion. At the conclusion of Martin's case-in-chief, Trinity made a motion for judgment as a matter of law under N.D.R.Civ.P. 50(a), arguing that Martin had failed to establish a breach of the contract. After the court denied the motion on that basis, Trinity argued that Martin's complaint sought damages of $75,000, but Martin now claimed damages of over $212,000. During the discussion on this issue, the court indicated it was concerned with N.D.C.C. § 32–03–09, and questioned whether damages had been established with the certainty that the statute required. The parties were given a full opportunity to address and argue that issue, and Trinity expressly moved the court to "dismiss the plaintiff's case for insufficient evidence on the issue of damages." Thus, although the court may have initiated discussion of the statute, Trinity had already generally raised an issue regarding damages and ultimately made a motion for judgment as a matter of law based upon insufficiency of the evidence on damages. The district court did not act as an advocate and did not grant its "own motion."

[¶ 37] Furthermore, under N.D.R.Civ.P. 50(a) there would be no error in the court raising the issue and granting judgment as a matter of law sua sponte. Numerous cases and leading treatises indicate that the trial judge may grant a pre-verdict judgment as a matter of law under Rule 50(a) on its own motion, or may indicate to the parties its willingness to entertain a pre-verdict motion for judgment under the rule. See, e.g., Aetna Cas. & Sur. Co. v. Leahey Constr. Co., 219 F.3d 519, 546 (6th Cir.2000); American & Foreign Ins. Co. v. Bolt, 106 F.3d 155, 159 (6th Cir.1997); American & Foreign Ins. Co. v. General Elec. Co., 45 F.3d 135, 139 (6th Cir.1995); Spence v. Board of Educ., 806 F.2d 1198, 1204 n. 2 (3rd Cir.1986); Peter-

son v. Peterson, 400 F.2d 336, 343 (8th Cir.1968); Isely v. Capuchin Province, 880 F.Supp. 1138, 1144 (E.D.Mich.1995); Garris v. Garris, 92 N.C.App. 467, 374 S.E.2d 638, 640–41 (1988); Gibbons v. Price, 33 Ohio App.3d 4, 514 N.E.2d 127, 134–35 (1986); 9 James W. Moore, Moore's Federal Practice § 50.05[5][a] (3d ed.2008); 9B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2533 (3d ed.2008).

[¶ 38] The district court did not improperly act as an advocate on behalf of Trinity, and the procedure employed by the court to grant judgment as a matter of law under N.D.R.Civ.P. 50(a) was not error.

V

[¶ 39] Trinity has cross-appealed, alleging the district court erred in refusing to grant its motion for judgment as a matter of law based upon Martin's alleged failure to prove a breach of contract.

[¶ 40] Although Trinity has filed a cross-appeal, we note that the judgment is entirely favorable to Trinity, dismissing Martin's claims in their entirety. It is unnecessary for an appellee to file a cross-appeal if the judgment below is entirely favorable. Kraft v. North Dakota State Bd. of Nursing, 2001 ND 131, ¶ 27 n. 1, 631 N.W.2d 572; Ward v. Shipp, 340 N.W.2d 14, 16 n. 1 (N.D.1983). On appeal, an appellee for whom a favorable judgment was entered may, without a cross-appeal, attempt to save the judgment by urging any ground raised in the trial court. Kraft, at ¶ 27 n. 1; Ward, at 16 n. 1; Tkach v. American Sportsman, Inc., 316 N.W.2d 785, 787 (N.D.1982).

[¶ 41] Trinity contends that the 2001 written employment contract expired on February 28, 2003, and its terms therefore do not apply after that date. Thus,

Trinity claims, it was not required to pay Martin under the contract after that date and it did not, as a matter of law, breach the contract.

[¶ 42] Trinity's rationale is too simplistic. Although the written contract may have by its terms expired on February 28, 2003, Martin continued to work for Trinity after that date. When an employee under a personal services contract continues working beyond its term, there is a presumption that the level of compensation remains the same:

> A contract to render personal service cannot be enforced against the employee beyond the term of two years from the commencement of service under it, but if the employee voluntarily continues the employee's service under it beyond that time, the contract may be referred to as affording a presumptive measure of the compensation.

N.D.C.C. § 34–01–02. Martin also presented evidence that when his 1995 written contract expired he continued working at Trinity from 1997 to 2001 without a written contract, and Trinity continued to pay his salary and bonuses as if the written contract were still in effect.

[¶ 43] We agree with the district court that the evidence created a question of fact for the jury on the terms of Martin's employment after February 28, 2003. Thus, in light of our resolution of the issue of damages, jury questions remain on whether the terms of the prior written agreement apply to Martin's employment after February 28, 2003, and whether he is entitled to an additional month of severance pay.

## VI

[¶ 44] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. We reverse the judgment dismissing Martin's action and remand for further proceedings limited strictly to whether Trinity has breached a contract of employment and whether, as a result of a breach, Martin is entitled to an additional month of severance pay. The parties shall each bear their own costs on appeal.

[¶ 45] DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 46] The Honorable GERALD W. VANDE WALLE, C.J., disqualified himself subsequent to oral argument and did not participate in this decision.