2011 ND 229

Dahn P. BEAUDOIN and J. Willard Beaudoin, as Trustees of the Wm. Beaudoin Irrevocable Mineral Trust dated May 15, 1981, Plaintiffs and Appellees,

v.

JB MINERAL SERVICES, LLC, Defendant and Appellant.

No. 20110030.

Supreme Court of North Dakota.

Dec. 13, 2011.

Rehearing Denied Jan. 12, 2012.

Jason James Henderson (argued) and Charles J. Peterson (appeared), Dickinson, N.D., for plaintiffs and appellees.

Greg W. Hennessy (argued), Williston, N.D., for defendant and appellant.

James L. Drought (appeared), Drought, Drought & Bobbitt, San Antonio, TX, for amicus Retamco Operating, Inc.

SANDSTROM, Justice.

[¶ 1] JB Mineral Services, LLC ("JB"), appeals from a summary judgment declaring an oil and gas lease terminated and awarding statutory damages, costs, and attorney fees to Dahn P. Beaudoin and J. Willard Beaudoin, as trustees of the William Beaudoin Irrevocable Mineral Trust ("Beaudoins"). We affirm, concluding the district court did not err in concluding JB failed to timely pay or tender the sum required to continue the lease and the lease automatically terminated by its express terms.

I

[¶ 2] JB is a Montana limited liability company that sought to lease certain oil and gas interests owned by Beaudoins in Stark County. In July 2009, JB sent to Beaudoins an oil and gas lease, a supplemental agreement, and a document JB alleges was a 120–day sight draft[1] in the amount of $165,600. The supplemental agreement provided, in part, that the lease would terminate 120 business days from the date of "notarized signature" unless JB paid or tendered $45 per net mineral acre as a "supplemental bonus payment" before the termination date. The agreement expressly provided: "If such sum is not timely paid or tendered, then said lease shall terminate and be of no further force or effect as of the Termination Date." Beaudoins executed the lease and supplemental agreement by notarized signatures on July 20, 2009, and presented the sight draft to their bank for payment on July 30, 2009. Payment of the sight draft, however, required further authorization by JB, which was not given.

[¶ 3] On January 6, 2010, JB sent a revised lease and a 25–day sight draft to Beaudoins, reflecting JB's claim that Beaudoins owned 3.68 fewer mineral acres than covered in the original lease. The revised lease would also have extended the term of the lease approximately six months longer than the July 2009 lease. Beaudoins never executed or agreed to the revised lease and did not present the second sight draft, which was for less than the original sight draft, for payment.

[¶ 4] Beaudoins claim that the "termination date" under the supplemental agreement was January 12, 2010, which was 120 business days after they signed the lease and supplemental agreement on July 20, 2009. On January 19, 2010, Beaudoins' counsel faxed a letter to JB advising that Beaudoins considered the lease terminated and invalid and that any subsequent attempt to pay the July 2009 sight draft would be rejected. JB's counsel replied by faxed letter the same day, advising that JB's position was that it had until January 20, 2010, to pay the supplemental bonus payment by funding the July 2009 sight draft. Beaudoins' counsel responded by faxed letter dated January 20, 2010, reiterating that the lease had already terminated and was invalid. JB never authorized payment of the July 2009 sight draft, but recorded the original July 2009 lease

---

1. Beaudoins have not argued that the conditional "sight draft" was not a "draft."

on January 20, 2010. Neither sight draft is in the record.

[¶ 5] Beaudoins sued JB to have the lease declared invalid and for statutory damages, costs, and attorney fees under N.D.C.C. § 47–16–37. Beaudoins moved for summary judgment. The district court granted summary judgment, concluding the parties' agreement unambiguously provided that the lease terminated on January 12, 2010, 120 business days after the notarized signatures by the Beaudoins, when JB failed to make the required bonus payment by that date. The court awarded Beaudoins statutory damages, costs, and attorney fees.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 47–16–37. JB's appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7] We have outlined the standards governing summary judgment under N.D.R.Civ.P. 56:

> "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reason-

ably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Lucas v. Riverside Park Condos. Unit Owners Ass'n*, 2009 ND 217, ¶ 16, 776 N.W.2d 801 (quoting *Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 5, 766 N.W.2d 458). If the moving party meets its initial burden of showing the absence of a genuine issue of material fact, the party opposing the motion may not rest on mere allegations or denials in the pleadings but must present competent admissible evidence to show the existence of a genuine issue of material fact. *E.g., Barbie*, at ¶ 6. Mere speculation is not enough to defeat a motion for summary judgment, and when no pertinent evidence on an essential element is presented to the district court in resistance to the motion for summary judgment, it is presumed no such evidence exists. *Id.*

## III

[¶ 8] JB first contends the July 2009 lease is valid because a royalty clause alone is sufficient consideration for an oil and gas lease under *Irish Oil & Gas, Inc. v. Riemer*, 2011 ND 22, 794 N.W.2d 715.

[¶ 9] In *Irish Oil*, the lessors argued the lessee's failure to timely pay bonus payments constituted a total failure of consideration for their oil and gas leases. *Irish Oil*, 2011 ND 22, ¶ 21, 794 N.W.2d 715. A majority of this Court held that because the leases also contained royalty clauses, the question whether failure to pay the bonus payments constituted a total failure of consideration or a partial failure

of consideration was a question of fact. *Id.* at ¶¶ 23–26. JB argues *Irish Oil* "appears to be exactly controlling" in this case and requires reversal of the summary judgment.

[¶ 10] Beaudoins have not argued that the lease in this case failed for lack of consideration. Rather, Beaudoins contend the lease terminated by its own terms through operation of an "unless" clause. The relevant provisions in the parties' supplemental agreement state:

1. Notwithstanding anything to the contrary contained in said lease, it is agreed that said lease shall terminate as of *120 business days from date of notarized signature* (hereinafter referred to as the Termination Date) *unless* Lessee, on or before said Termination Date, shall pay or tender to the Lessor(s), or any successor bank, as a Supplemental Bonus Payment, the sum of *Forty Five Dollars ($45.00)* per net mineral acre owned by Lessor(s) and covered by said Lease. The payment or tender of said sum may be made by cash, check, or draft, mailed or delivered to the Lessor(s) or to said bank on or before said Termination Date.

2. If said supplemental bonus payment is timely paid or tendered, then said lease shall be and continue in full force and effect according to its terms. If such sum is not timely paid or tendered, then said lease shall terminate and be of no further force or effect as of the Termination Date. It is understood and agreed that Lessee has the right to, but is not obligated to, make said supplemental bonus payment. In the event said supplemental bonus payment is not made as set forth above and said lease has been filed in the

records of said County and State, it is agreed that Lessee shall promptly execute and file of record a release of said lease. (Emphasis added to "unless.")

[¶ 11] These provisions of the parties' agreement constitute an "unless" clause. An "unless" clause provides that the lease shall terminate unless the lessee does some specific act, such as commencing a well or making specified payments. 3 Howard R. Williams and Charles J. Meyers, *Oil and Gas Law* § 606 (2010). This Court has explained the application of an "unless" clause:

> An "unless" clause does not obligate the lessee to do an act but provides that the lease shall terminate unless the lessee does some act. The "unless" clause does not state a condition subsequent upon which the lease may be forfeited, but it is construed as a clause of special limitation and if delay rental payments required by the lease are deficient in either time or the amount of payment, the lease terminates automatically, without any requirement of notice or demand on the part of the lessor.

*Serhienko v. Kiker*, 392 N.W.2d 808, 811–12 (N.D.1986); *see also Borth v. Gulf Oil Exploration & Prod. Co.*, 313 N.W.2d 706, 709 (N.D.1981); *Norman Jessen & Assocs., Inc. v. Amoco Prod. Co.*, 305 N.W.2d 648, 650 (N.D.1981).

[¶ 12] Beaudoins do not contend the lease in this case failed for lack of consideration, but rather argue it automatically terminated by its express terms under the "unless" clause when JB failed to timely tender payment. The leases in *Irish Oil* did not contain "unless" clauses, and the holding in that case was based solely upon the lessors' contention that there had been a total failure of consideration which invalidated the leases. The holding in *Irish Oil* does not apply to this case.

## IV

[¶ 13] JB contends the district court erred in holding the lease had terminated by its express terms when JB failed to make the supplemental bonus payment by January 12, 2010, the termination date in the contract. JB summarized its argument in its brief on appeal:

JB's position on the validity of the Oil and Gas Lease signed July 20, 2009 is that it made timely tender of the lease bonus draft within 120 days of signing of the lease by delivering the $165,600.00 draft to Beaudoins the same day the lease was signed, all in accordance with the Supplemental Agreement which was also signed that same day.

[¶ 14] Under the terms of the supplemental agreement, the lease terminated 120 days after "notarized signature" unless JB, "on or before said Termination Date, shall pay or tender to" Beaudoins "the sum of *Forty Five Dollars ($45.00)* per net mineral acre." The agreement further provided: "The payment or tender of said sum may be made by cash, check, or draft, mailed or delivered to" Beaudoins "on or before said Termination Date." There is no dispute that Beaudoins signed the lease and supplemental agreement on July 20, 2009, and the 120 business days expired on January 12, 2010. The district court concluded that the supplemental agreement unambiguously required payment of the bonus by January 12 and that the lease terminated by its own terms when payment was not received by that date.

[¶ 15] JB contends, however, that the agreement did not require payment actually be made by January 12, but merely required that payment be *tendered*, by cash, check, or draft, by that date. Thus, JB argues tender of the $165,600 sight draft in July 2009 constituted tender of a draft for the amount of the supplemental bonus payment within the contractual period and continued the lease, even if payment of the draft was not due until after the termination date. JB further argues that it had until January 20, 2010, to authorize payment of and fund the July 2009 sight draft.

[¶ 16] The language of the parties' supplemental agreement is clear and unambiguous. The first sentence of subsection 1 of the supplemental agreement provides that the lease shall terminate 120 business days from date of notarized signature unless JB "shall pay or tender" to Beaudoins "the sum of *Forty Five Dollars ($45.00)* per net mineral acre" on or before that termination date. Similarly, the second sentence in subsection 2 states that "[i]f such sum is not timely paid or tendered, then said lease shall terminate."

[¶ 17] JB was clearly required to pay or tender the sum of $45.00 per mineral acre for the minerals covered under the lease by January 12, the termination date specified in the agreement. Payment or tender of the sum requires more than tender of a draft which by its terms was not payable until a future date after January 12 and which was admittedly not funded by January 12. Carried to its logical extreme, JB's argument that it could satisfy the requirements of the agreement merely by tendering a draft which was payable at some future date by the January 12 deadline would allow a lessee to submit a draft which was not payable until weeks, months, or even years after the termination date. If all that is required is tender of a draft, without regard to the date the draft becomes payable or is funded, the lessee would be allowed to effectively extend the termination date indefinitely.

[¶ 18] JB relies upon the language in the parties' agreement providing that "payment or tender of said sum may be made by cash, check, or draft, mailed or

delivered to the Lessor(s) or to said bank on or before said Termination Date." We read this language to merely designate the means by which payment may be made, not to suggest that the tender of a draft promising to pay the required sum at some future date after the termination date satisfies the terms of the parties' agreement. Such a result would allow the lessee to extend the due date for actual payment to the lessee without limit, in contradiction of the parties' clearly expressed intent. Although the supplemental agreement allows the lessee to tender the sum by check or draft mailed or delivered to the lessor by the termination date, the check or draft must be immediately payable and funded on that date, not delayed until some future date, to satisfy the agreement's requirement that the sum be tendered by the termination date.

█ [¶ 19] Although it may appear harsh to enforce the automatic termination provision in the agreement against JB under these circumstances, we again note that the provisions in the supplemental agreement constitute an "unless" clause. This Court has recognized that the "unless" clause was developed for the benefit of the lessee, and is strictly construed against the lessee even though harsh results may occur:

> The "unless" clause was developed to allow the lessee under an oil and gas lease to terminate the obligation to drill or pay delay rentals where no oil and gas were found on the property subject to the lease.... The policy of strictly construing the "unless" clause has been followed even though harsh results may occur. Similarly, the rule of automatic termination of a lease containing an "unless" clause has been applied with equally harsh results.

*Norman Jessen & Assocs.*, 305 N.W.2d at 651. The burden of preventing a lease with an "unless" clause from terminating lies upon the lessee, and if the payments required by the lease are deficient in either the time or the amount of payment, the lease terminates automatically. *Borth*, 313 N.W.2d at 709. Professors Williams and Meyers further explain:

> This rule of automatic termination of the lease for failure to make timely payment or tender of rental may seem unduly harsh in some cases. The lessee had the intent and the ability to perform the conditions necessary to hold the lease. Moreover the lessor was not injured by the failure since in these cases the lessor, subsequent to the due date, has been tendered the delay rental with legal interest. Nevertheless the cases which hold the lease has automatically terminated for failure to make timely payment seem correct. The "unless" type drilling and rental clause is a clause of limitation, not one of covenant or condition. The lessee may relieve himself of further liability under the lease by simply failing to commence operations or pay rentals during the primary term. The lessee who has this benefit of the automatic termination of the lease should have no standing to claim relief from the automatic termination when he is responsible for a failure to make timely payment of rental.

3 Williams & Meyers, *supra*, § 606.2 (footnote omitted). Thus, courts have been "substantially unanimous" in holding that the lease terminates automatically if the lessee fails to pay or tender the required payment on or before the due date, including when the payment was late by as little as one day, or was tendered to the wrong bank or the wrong party, or was misaddressed in mailing, or was late because of mistake as to the proper due date. *Id.*

[¶ 20] The result we reach in this case does not conflict with the holding in *Ny-*

*gaard v. Continental Res., Inc.*, 1999 ND 172, 598 N.W.2d 851. In *Nygaard*, the parties had entered into a three-year oil and gas lease with an option allowing the lessee to extend the lease for an additional two years by remitting to the lessor "an amount equal to $10.00 per net mineral acre" by January 4, 1998. *Id.* at ¶ 2. On December 12, 1997, the lessee tendered a five-day sight draft for the required amount. The lessor did not present the sight draft for payment but notified the lessee on January 8, 1998, after the deadline for payment had passed, that the sight draft was an unacceptable form of payment. The lessor sued to quiet title, and this Court on appeal rejected the lessor's challenge to the form of payment and his assertion that the parties' agreement required payment only by cash. *Id.* at ¶¶ 6–14.

[¶ 21] *Nygaard* is distinguishable from this case on several key points. The lessor in *Nygaard* was challenging only the *form* of payment, not the timeliness of the payment by sight draft. This Court rejected the claim that payment could be made only in cash, noting that the lessor had not contemporaneously objected to the form of payment and that the parties' agreement did not specify payment could only be in cash. *Id.* In *Nygaard*, the five-day sight draft was tendered 24 days before payment was due, providing ample opportunity for the lessor to present it for payment and effectively convert it to cash prior to the January 4, 1998, deadline. In this case, however, JB relies upon the use of the sight draft to attempt to extend the payment date beyond the termination date set in the parties' agreement. Beaudoins do not allege that JB could not make the payment by a sight draft, but contend that any such draft had to be payable and funded by the termination date set in the agreement. The issue in this case, unlike *Nygaard*, is timeliness of the payment, not its form. We also note that *Nygaard* involved an extension to a lease, not an "unless" clause, which requires strict construction against the lessee. *See, e.g., Norman Jessen & Assocs.*, 305 N.W.2d at 651; 3 Williams & Meyers, *supra*, § 606.2.

[¶ 22] Applying the rule of strict construction of an "unless" clause to the unambiguous language of the parties' supplemental agreement, we conclude the district court did not err in concluding that JB failed to timely pay or tender the required sum under the parties' agreement and the lease automatically terminated on January 12, 2010.

### V

[¶ 23] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. The summary judgment is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.