2012 ND 88

**Danni Jane LYNCH, Plaintiff and Appellant,**

v.

**The NEW PUBLIC SCHOOL DISTRICT NO. 8 A Rural School District in Williams County, North Dakota, Defendant and Appellee.**

No. 20110109.

Supreme Court of North Dakota.

May 3, 2012.

Irvin B. Nodland, Bismarck, N.D., for plaintiff and appellant.

Tiffany Lynn Johnson, Bismarck, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1]  Danni Lynch appealed from a district court summary judgment dismissing her action against The New Public School District No. 8 ("the District") for breach of contract, damage to professional reputation, intentional infliction of emotional harm, and negligent infliction of emotional harm.  We affirm, concluding that: (1) Lynch was not entitled to a notice of nonrenewal; (2) the District did not violate its grievance procedures; and (3) the district court did not abuse its discretion in denying Lynch's motion to compel discovery.

I

[¶ 2]  Prior to 2008 the District's three elementary schools, Garden Valley, Round Prairie, and Stony Creek, each included students through the eighth grade.  In 2008, the District lost its accreditation.  To regain accreditation the District needed to offer more electives for students in grades 7 and 8, and to do so it decided to reconfigure its elementary schools.  Garden Valley became an upper elementary school for grades 7 and 8, and Round Prairie and Stony Creek became K–6 elementary schools.  As a result of the reconfiguration plan, several teachers were transferred to different schools within the district.

[¶ 3]  Lynch had taught the fifth grade class at Stony Creek for eighteen years.  In June 2008, Lynch was informed she was being transferred to Round Prairie to teach second grade.  On July 9, 2008, she sent a letter to Gregory McNary, the District's superintendent, requesting a written explanation of the reasons for the decision to transfer her to Round Prairie and asking for reconsideration of the decision.  The District responded by letter indicating that the decisions on teacher transfers were made to promote the best interests of the students and that those decisions would not be changed.

[¶ 4]  On August 11, 2008, Lynch was notified that the position at Round Prairie had been updated to a combination second and third grade position and that she had until August 14, 2008, to return a signed contract.  On August 14, 2008, Lynch returned her signed contract to the District with a cover letter indicating she was "signing this contract under duress" and "asking you to begin the grievance process at this time."

[¶ 5]  Lynch's first day of work under the contract was August 19, 2008.  Lynch did not appear for work that day, but instead sent a letter to the District stating, in part: "With much regret and sadness I am writing this letter to inform you that I cannot in good faith accept a demotion and the loss of the 5th grade teaching position that I have faithfully held for the past 18 years that the school district has now arbitrarily given to another 5th grade school teacher whose school was closed."  The District construed Lynch's letter as a resignation and held a public hearing at which it accepted her resignation.

[¶ 6]  Lynch brought this action against the District, alleging breach of contract, damage to professional reputation, intentional infliction of emotional harm, and negligent infliction of emotional harm.  The district court granted the District's motion for summary judgment dismissing Lynch's claims.  Lynch filed motions for reconsideration of the court's order granting summary judgment and to compel discovery.  The district court denied the motions, and judgment was entered dismissing Lynch's claims.

II

[¶ 7]  We have outlined the standards governing summary judgment under N.D.R.Civ.P. 56:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Richard v. Washburn Pub. Sch.*, 2011 ND 240, ¶ 9, 809 N.W.2d 288 (quoting *Loper v. Adams*, 2011 ND 68, ¶ 19, 795 N.W.2d 899). The party opposing a properly supported motion for summary judgment must demonstrate there is a genuine issue of material fact:

If the moving party meets its initial burden of showing the absence of a genuine issue of material fact, the party opposing the motion may not rest on mere allegations or denials in the pleadings but must present competent admissible evidence to show the existence of a genuine issue of material fact. Mere speculation is not enough to defeat a motion for summary judgment, and when no pertinent evidence on an essential element is presented to the district court in resistance to the motion for summary judgment, it is presumed no such evidence exists.

*Rickert v. Dakota Sanitation Plus, Inc.*, 2012 ND 37, ¶ 8, 812 N.W.2d 413 (quoting *Beaudoin v. JB Mineral Servs., LLC*, 2011 ND 229, ¶ 7, 808 N.W.2d 671).

III

[¶ 8] Lynch contends that she was entitled to notice of nonrenewal of her contract when the District decided to transfer her to a different school and that, when the District failed to give notice of nonrenewal, it was required to offer her a contract under the same terms and conditions as her existing contract.

[¶ 9] A school district which is contemplating not renewing the contract of a currently employed teacher must give notice of the contemplated nonrenewal by April 15 of the current school year and hold a hearing by April 21. N.D.C.C. § 15.1–15–05(1). If the school district decides not to renew the contract of the teacher it must give notice of nonrenewal by May 1. N.D.C.C. § 15.1–15–04(1). A failure to provide written notice of nonrenewal by May 1 "constitutes an offer to renew the individual's contract for the ensuing school year, under the same terms and conditions as the individual's current contract." N.D.C.C. § 15.1–15–04(1)(c).

[¶ 10] This Court delineated the scope of a teacher's continuing employment rights, interpreting the nearly identical predecessor statute to N.D.C.C. § 15.1–15–04(1)(c), in *Enstad v. North Cent. of Barnes Pub. Sch. Dist. No. 65*, 268 N.W.2d 126 (N.D.1978). The Court outlined a school district's authority when it makes an offer of reemployment to a teacher, concluding that the teacher does not have a right to an identical contract with identical duties and assignments as the preced-

ing year. *Id.* at 134. In reaching that conclusion the Court expressly relied upon, and quoted with approval from, two decisions of the Supreme Court of South Dakota, *Collins v. Wakonda Indep. Sch. Dist. No. 1*, 252 N.W.2d 646 (S.D.1977), and *Goodwin v. Bennett Cnty. High Sch. Indep. Sch. Dist.*, 88 S.D. 639, 226 N.W.2d 166 (1975). *Enstad*, at 132–34. The Court's decision in *Enstad* indicated that the teacher's statutory right to an offer of reemployment is the right to continued employment in the district in a position for which the teacher is qualified, not the right to a specific school or grade level:

> The purposes of the Continuing Contract Law are to provide teachers security in employment and to prevent dismissal of a teacher without cause. The employment protected is the right to continued employment within the school district in a teaching position for which the teacher is qualified. Moreover, the position offered in the new contract must not be a demotion, as compared to the teaching position held under the existing contract. [Citations omitted.]
>
> By the Continuing Contract Law the legislature did not, however, intend to grant the teacher a vested right to a specific school or to a specific class level of students within any school, in the district. The school board must be able to adapt to changes in enrollment, curriculum, available money, and other circumstances in determining the re-employment contract which is to be offered.

*Id.* at 133 (quoting *Collins*, at 647–48). The Court further noted:

> A teacher, in acquiring a permanent status, does not thereby acquire a vested right to teach any certain class or in any certain school. The tenure laws do not interfere with the general power and right of school authorities to assign teachers to particular classes and to par-

ticular schools in accordance with their judgment and desire reasonably exercised. Such laws do not take from school authorities their incidental powers, originally to assign and subsequently to transfer a teacher to such classroom, such building, and such division as it may determine to be for the best interest of the school as long as the teacher is not thereby demoted in violation of the laws. [Citations omitted.] The power to transfer or reassign must be exercised in good faith and for the best interest of the school district, and must not be on an arbitrary and capricious basis or for the purpose of compelling a teacher's resignation.

*Enstad*, at 133 (quoting *Goodwin*, at 168–69) (emphasis omitted).

[¶ 11] The Court in *Enstad* ultimately concluded:

> We construe Section 15–47–27, N.D.C.C. [the predecessor to N.D.C.C. § 15.1–15–04(1) ], to require that the school board's offer of reemployment must be a reasonable offer made in good faith. The offer of reemployment cannot impose unreasonable terms, conditions, or changes in assignments from those in the teacher's current contract. However, this section does not grant a teacher the right to an offer of reemployment consisting of the identical contract as the teacher possesses during the current school term. This section does not divest the school board of its authority to make changes in assignments of classes or extracurricular duties in its role of operating and maintaining the school system.

*Enstad*, 268 N.W.2d at 134; *see also Wenman v. Center Bd. of Valley City Multi–Dist. Vocational Ctr.*, 471 N.W.2d 461, 463 (N.D.1991); *Coles v. Glenburn Pub. Sch. Dist. No. 26*, 436 N.W.2d 262, 264 (N.D. 1989); *Quarles v. McKenzie Pub. Sch.*

*Dist. No. 34,* 325 N.W.2d 662, 667 (N.D. 1982). In *Quarles,* at 667, the Court further clarified its holding in *Enstad:*

> Our decision in *Enstad, supra,* should be read to permit a school board to assign new duties and classes for which the teacher is qualified or to remove duties and classes without the necessity of following the procedure specified for nonrenewal of a teacher's contract in Sections 15–47–27 and 15–47–38, N.D.C.C. We believe these powers are necessarily implied in the authority given to school boards by Section 15–29–08(2), N.D.C.C. [the predecessor to N.D.C.C. § 15.1–09–33(2) ], to "organize, establish, operate, and maintain such elementary and high schools as it [the school board] may deem requisite and expedient, . . ."

■ [¶ 12] As long as the school district's offer of reemployment is reasonable and made in good faith, it constitutes an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the current school year, and no notice of nonrenewal is required. *Enstad,* 268 N.W.2d at 134. Lynch was offered a contract to teach within the District in a position for which she was qualified. The record further shows that Lynch's reassignment resulted from the District's decision to reconfigure its elementary schools, converting one of the elementary schools to a grade 7–8 upper elementary school and reassigning K–6 students to the remaining two elementary schools. Several teachers in addition to Lynch were reassigned as a result. Although Lynch argues that the reconfiguration could have been accomplished without transferring her to another school, or that the accreditation problems could have been resolved without reconfiguring the elementary schools, Lynch failed to present any competent admissible evidence in opposition to the summary judgment motion suggesting the District acted unreasonably or in bad faith in determining Lynch's reassignment best served the educational purposes of the District. Therefore, as a matter of law, the District's offer was reasonable and made in good faith, and Lynch had no right to a notice of nonrenewal before the District reassigned her to a different school within the District.

■ [¶ 13] Lynch contends the extra travel time and expense resulting from her reassignment to Round Prairie was effectively a reduction in pay, citing cases indicating that a severe reduction in salary triggers the requirement that the District issue a notice of nonrenewal. *See Wenman,* 471 N.W.2d at 465; *Coles,* 436 N.W.2d at 264. In *Quarles,* 325 N.W.2d at 667, the Court explained that a nonrenewal hearing is required when a change in assigned curricular duties is coupled with a severe reduction in salary:

> [W]hen the adjustment of duties results in a severe reduction in salary for curricular activities the nonrenewal procedures must be followed. It is apparent to us that salary is, for most persons, the single most significant portion of a contract. To expect a teacher to accept or reject a contract with a severe reduction in salary for curricular activities, without providing the teacher with a nonrenewal hearing as required by Section 15–47–38(5), N.D.C.C., is to ignore that fact. It would permit to be accomplished indirectly, without a hearing, what cannot legally be accomplished directly without a hearing. The *Enstad* decision and the cases cited therein apply to a change in assignment of duties without a reduction in salary or with a corresponding increase in salary.

[¶ 14] All of the cases in which this Court has held that a reduction in pay triggered the right to a nonrenewal hearing involved an actual reduction in the contract salary paid to the affected teacher or administrator. *See Wenman,* at 465; *Coles,* at 264; *Quarles,* at 667. In this case, Lynch does not argue that her contractual salary or benefits were reduced in the offered contract. Rather, she relies solely upon the incidental extra time and expense that would result from her reassignment, but cites no cases or other authority indicating that incidental financial or time consequences of a reassignment constitute a significant alteration of the terms of employment which would require a notice of nonrenewal. Lynch was offered a contract to teach within the district in a position for which she was admittedly qualified, and with no reduction in salary or benefits. The incidental financial and time consequences of the transfer did not constitute a reduction in her contractual salary which would trigger a right to notice of nonrenewal.

[¶ 15] We conclude Lynch was not denied her right to a notice of nonrenewal under N.D.C.C. § 15.1–15–04(1), and the District made a reasonable offer of reemployment in good faith.

### IV

[¶ 16] Lynch contends the District violated the grievance procedures in the negotiated agreement between the District and its teachers.

[¶ 17] The District's negotiated agreement applicable in 2008 included a three-step grievance procedure to resolve disputes arising under the agreement. The first step of the grievance procedure provided that, if a dispute could not be resolved informally, the teacher could file a formal written grievance:

*Level One*

A grievance shall be first discussed with the administrator or appointed designate with the intent of resolving the matter informally. If the matter is not resolved informally, the grievant may present a formal written grievance to the administrator or appointed designate. The administrator or appointed designate shall within five (5) working days hold a conference with the grievant and work in good faith to seek an equitable solution. Following the conference the administrator or appointed designate shall tender a written response within five (5) working days to the grievant.

If the grievance was not resolved at this initial level, Levels Two and Three allowed the teacher to submit the dispute to a grievance committee and to ultimately seek binding arbitration. The negotiated agreement also specified the requirements for submitting the formal written grievance:

A grievance shall not be valid for consideration unless the grievance is submitted in writing to the building principal setting forth the facts and the specific provisions of the Agreement allegedly violated and the particular relief sought within twenty (20) days after the date of the event giving rise to the grievance occurred. Failure to file any grievance from one level to another within the time periods hereafter provided shall constitute a waiver of the grievance. An effort shall first be made to adjust an alleged grievance informally between the certified teaching personnel and the building principal or his designee.

[¶ 18] Lynch contends on appeal that her July 9, 2008, letter to the District's superintendent was a request to commence the formal grievance procedure and that a District administrator should have held a conference with her within five working days under the requirements of Level One

of the grievance procedure. Lynch's July 9, 2008, letter to superintendent NcNary requested a written explanation of the specific reasons she was being transferred to Round Prairie and requested that the District reconsider the proposed transfer. It did not mention the grievance procedure. The District responded by letter dated July 21, 2008, explaining that the reconfiguration plan had resulted in numerous staffing changes, that the decision had been made in the best interests of the students, and that the decision would not be changed. On August 14, 2008, in her cover letter sent to superintendent McNary with her signed contract, Lynch stated: "I will be asking you to begin the grievance process at this time."

[¶ 19] Lynch's assertion on appeal that her July 9, 2008, letter triggered the formal grievance procedure is belied by her own pleadings and by the language of her July and August letters to superintendent McNary. In her complaint, Lynch alleges: "On August 14, 2008 pursuant to the rights granted to her by said Negotiated Agreement plaintiff made express written request that the District commence the formal Grievance Procedure provided for in said Agreement." By contrast, the complaint does not allege that Lynch's July 9, 2008, letter requested commencement of the formal grievance procedure, but characterized that letter as a "written request for reconsideration of the change in her employment and asked for a written explanation of the reasons for the District's actions and for its having offered her position at Stony Creek School to another teacher with less experience and seniority." Lynch contends that she corrected this allegation in her deposition testimony, indicating her belief that the July letter initiated the formal grievance procedure, but she never amended her complaint to clarify the allegations.

[¶ 20] More significantly, however, the language of her letters and the provisions of the negotiated agreement demonstrate that Lynch's July letter was not intended to, nor was it sufficient to, trigger the formal grievance procedure. Lynch's July letter did not even mention the grievance procedure, but her August 14 letter specifically stated: "I will be asking you to begin the grievance process at this time." In addition, Lynch's July letter did not satisfy the requirements set by the negotiated agreement to initiate the formal grievance procedure. The negotiated agreement expressly provided that "[a] grievance shall not be valid for consideration unless the grievance is submitted in writing to the building principal setting forth the facts and the specific provisions of the Agreement allegedly violated and the particular relief sought." Lynch's July letter was not directed to the building principal and did not set forth the specific provisions of the negotiated agreement which were allegedly violated. At best, Lynch's July letter may be viewed as an initial attempt to resolve the dispute informally, as required by Level One as a prerequisite to the filing of a formal written grievance. The District therefore did not violate the negotiated agreement when it did not commence the formal grievance procedure in response to Lynch's July letter.

[¶ 21] The earliest Lynch requested the District to initiate the formal grievance procedure was August 14, 2008, and she effectively resigned before expiration of the five working day period within which the District would have been required to respond. Accordingly, we conclude the District did not violate the grievance procedures in the negotiated agreement.

V

[¶ 22] Lynch contends the district court erred in denying her motion for

an order compelling discovery, which was first made after summary judgment had been granted. Lynch argues the District should have been compelled to produce "emails ... between the members of the Board and the School Administrator during the critical time when decisions were being made to transfer Danni from Stony Creek to Round Prairie."

[¶ 23] We have outlined the broad scope of the district court's discretion over discovery disputes and our limited standard of review on appeal of the district court's resolution of those disputes:

> "A district court has broad discretion regarding the scope of discovery, and its discovery decisions will not be reversed on appeal absent an abuse of discretion." *Investors Title Ins. Co. v. Herzig*, 2010 ND 169, ¶ 38, 788 N.W.2d 312 (quoting *Martin v. Trinity Hosp.*, 2008 ND 176, ¶ 17, 755 N.W.2d 900). "A party asserting the court abused its discretion in denying discovery carries a heavy burden." *Id.*

> An abuse of discretion by the district court is never assumed, and the burden is on the party seeking relief affirmatively to establish it. The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. The party seeking relief must show more than the district court made a "poor" decision, but that it positively abused the discretion it has under the rule. We will not overturn the district court's decision merely because it is not the decision we may have made if we were deciding the motion.

*Id.* (quoting *Martin*, at ¶ 17). *Leno v. K & L Homes, Inc.*, 2011 ND 171, ¶ 23, 803 N.W.2d 543.

[¶ 24] In support of her motion to compel, Lynch submitted her affidavit acknowledging she had been informed the relevant e-mails had been erased but asserting: "It is my understanding erased e-mails can be retrieved by technicians who know how to do that and I want that to be done." She did not, however, provide any evidence from computer technicians or professionals regarding recoverability of the e-mails in this case. In response to Lynch's motion to compel, the District submitted affidavits of superintendent McNary and of the manager of support and technical services of the District's e-mail provider stating that the e-mails Lynch requested would have been routinely overwritten 30 days after they were originally sent and that it was not possible through any forensic method to retrieve the e-mails from the relevant time period. The district court concluded that the information was unavailable and the issue was therefore moot.

[¶ 25] We conclude the district court did not abuse its discretion when it denied Lynch's motion to compel discovery.

## VI

[¶ 26] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. The judgment is affirmed.

[¶ 27] MARY MUEHLEN MARING, DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.